FIRST NATIONAL BANK OF REMSEN, Appellant, v. J. M. HAYES, County Auditor, et al., Appellees.

**TAXATION:** Assessment—Time Limit for Correction of Error. The county auditor is without authority to correct an error in an assessment, under Sec. 1385-b, Code Supp., 1913, after the tax list has been completed, passed to the county treasurer, and the tax levy has been paid.

**BANKS AND BANKING:** Taxation of Stock—Mode of Assessment. Under Sec. 1322, Code Supp., 1913, the assessor, in assessing shares of stock of banks, is required to fix the value of such stock from the sworn statement provided for under Sec. 1321, Code Supp., 1913, of the officers of the bank, based upon the capital, surplus, and undivided profits, and is not to go beyond the sworn statement of the officers of the bank, and cannot resort to other information; and the value at which each share is to be thus assessed is to be arrived at by taking the capital stock (not surplus), to be computed from said statement, and adding thereto the surplus and undivided earnings, and deducting from this amount the portion of the capital actually invested in real estate owned by the bank, or by a company owning only real estate on or upon which the bank is located, and then taking the remainder and dividing the same by the whole number of shares issued. This will give the value of each share to be assessed.

**TAXATION:** Assessment—Bank Stock. Under the provisions of Secs. 1305 and 1322-1a, Code Supp., 1913, the assessor, in making his assessment on bank stock under Secs. 1321 and 1322,

Code Supp., 1913, performs merely ministerial functions, and all that is expected of him is a correct computation; and where he has made a mistake in the assessment for the current year, and where the sworn statement of the bank through its officials, made under Sec. 1321, Code, 1897, filed with the county auditor in connection with the assessment rolls, disclosed an error by the assessor in making a computation of the value of the bank stock, the error in assessment was such as is contemplated under Sec. 1385, Code, 1897, and was one that the county auditor could correct, and enter, as corrected, on the tax list of the county, as to the current year. Otherwise, as to previous years.

*Appeal from Plymouth District Court.*—WILLIAM HUTCHIN-SON, Judge.

APRIL 8, 1919.

REHEARING DENIED JULY 7, 1919.

APPEAL from the assessment of the value of shares of stock issued by a national bank resulted in confirmation thereof. The bank appeals.—*Affirmed.*

*Kass Bros.,* for appellant.

*Nelson Miller,* for appellee.

LADD, C. J.—The capital stock of the First National Bank of Remsen, Iowa, consisted of 500 shares of the par value of $100 each, distributed in 1917 among 16 shareholders. These shares were estimated by the assessor to be of the total value of $38,357.38, and the auditor increased such amount to $76,720.33, and entered the shares at such increased value on the tax list, before said list was transferred to the treasurer's office. At the same time, the auditor undertook to correct the assessments of the assessor for the years 1916, 1915, 1914, and 1913. That the proceedings by the auditor were as prescribed by Section 1385-b of the Code Supplement, 1913, is not questioned. The several assessments were more than doubled. The bank object-

ed to increasing the assessment, when appearing before the county auditor in pursuance of notices to show cause why the errors in the several assessments should not be corrected, on the grounds: (1) That the assessment was legally made by the assessor, and not subject to increase by the auditor for any of the years mentioned; (2) the auditor was without authority to make said increase; (3) no property of the bank subject to assessment was overlooked; (4) all its property having been assessed, there was no authority for increasing the assessment thereof; and (5) that its property was duly assessed, and such assessment was final and conclusive, and not subject to any correction by the auditor. These objections were overruled, and the auditor computed from the capital, surplus, and undivided earnings the value of the stock, and, as he contended, by way of correction, increased the value of the shares in 1917 as stated, and in the four preceding years.

Appellant contends: (1) That the auditor was without power to correct an assessment for any year previous to the current year; and (2) that what he did was really increasing the amount of said assessment of the several shares, rather than correcting the same, as appellee says was done. These issues necessarily depend upon the construction to be given statutes relating to the assessment of bank stock.

I. The authority of the county auditor to correct any error in an assessment or tax list is not questioned; but it is argued that he may not so do after the tax list has been completed, passed to the county treasurer, and the taxes levied have been paid. In *Ridley v. Doughty,* 77 Iowa 226, and 85 Iowa 418, the taxes were found not to have been paid, and it was said that the correction of the auditor's mistake in ignoring a resolution of the board of supervisors, reducing the assessments on real estate with-

1. Taxation:
assessment:
time limit for
correction of
error.

in an incorporated town 44 per cent, and entering the same
in the tax list at the valuation fixed by the assessor, was a
duty he was bound to discharge, and declared that, in such
a case, he might be compelled to make the correction by
mandamus. There, the assessment was made in 1887, and
the demand for correction, August 7, 1888; and the intima-
tion is to be found therein that, but for the taxes' not hav-
ing been paid, the remedy would not have been available.
The authority to correct the assessment and that to assess
omitted property is found in the same section; and, in
*In re Estate of Mead v. Story County*, 119 Iowa 69, con-
struing Section 1385-b, now found in Code Supplement,
1913, the county auditor was held to have no authority to
list and assess omitted property, except in the preparation
and completion of the tax list for the current year. Section
1385 of the Code provided that:

"The auditor may correct any error in the assessment
or tax list, and when such correction affecting the amount
of tax is made after the books shall have passed into the
hands of the treasurer, he shall charge or credit him, as the
case may be, therefor, and report the same to the board of
supervisors."

This was repealed by Chapter 47 of the Acts of the
Twenty-eighth General Assembly (Section 1385-b of the
Code Supplement, 1913), substituted therefor.

In the case last cited, Bishop, J., speaking for the court,
said:

"It seems clear that, under Code Section 1385, the
county auditor was authorized to correct only errors of
commission appearing in the assessment or tax list, and to
which his attention might be called in any way. It is equal-
ly clear that, by the act of the twenty-eighth general as-
sembly, there was added to the powers of the auditor the
right to correct errors of omission, as well as of commission
There is nothing in the section of the Code, or in the later

act of the general assembly, however, from which the conclusion may properly be drawn that it was the legislative intention to invest the auditor with power to thus deal with any assessment or tax list save that of the current year. On the contrary, it seems to us that if, in the preparation of such list, or if, after the same had been prepared by him and passed to the treasurer, errors or omissions were discovered, it became his duty to correct the same. Such, we think, is the plain purport of the statute. Surely, there is nothing in the provisions thereof which gives the auditor the right, or, what is the same thing, makes it his duty, to take cognizance of any and all errors of omission and commission that it may be asserted or alleged exist in connection with the assessment and tax lists made up for and used in previous years. We think that, within the contemplation of Section 1385, and as applied to the current year, the errors that might be corrected thereunder were such as had relation to the name of the person against whom the assessment was made, the description of the property assessed, or the valuation thereof and the amount of the tax extended. The section as amended by Chapter 47, etc., does not broaden the scope of the auditor's powers, save that, having first given notice, he may include in his assessment or tax list property which the assessor failed to assess and return, and may extend a tax thereon."

We are not inclined to recede from this view, and there is nothing in *Ridley v. Doughty,* supra, to the contrary. The error in the assessment or tax list is one relating to perfecting the tax list in the course of preparation or thereafter, at any time prior to the payment of taxes levied. Retroactive authority is not expressly conferred on the auditor, and there is no good reason for saying that, after the tax lists have been perfected by the officers, in so far as they know, and accepted by the property owner in discharging the burden imposed, the auditor may go "back of the re-

turns" and, by the correction of errors thereafter discovered, exact payment of additional sums as taxes which neither the public nor the taxpayer knew of, or might reasonably have anticipated. There ought to be a time beyond which even an error in name, description, or valuation may not be corrected to the detriment of the taxpayer, and that time is when the proceedings relating to assessment, listing and collection of the tax, always construed *ad invitum,* have been consummated by full payment of the amount exacted, by the records as they then exist. It follows that the county auditor exceeded his authority in undertaking to correct errors in the assessment of shares of stock made prior to 1917.

II.    Was the error in the assessment of 1917 such as the county auditor was authorized to correct? The assessor estimated the value of each of the shares of stock at $76.71.

2. BANKS AND
BANKING: taxation of stock:
mode of assessment.

The auditor computed the value thereof, from the sworn statement of an officer of the bank (giving data from which the capital might be computed), indicating the capital, surplus, and undivided profits, and raised the assessment of each share accordingly to $153.44. Had the statutes continued as they were prior to the enactment of Chapter 63 of the Acts of the Thirty-fourth General Assembly, the assessment of the shares must have been in accordance with the assessor's judgment and discretion, and the remedy, if any, must have been by appeal. This appears from an excerpt from Section 1322 of the Code:

"To aid the assessor in fixing the value of such shares, the corporations shall furnish him a verified statement of all the matters provided in the preceding section, which shall also show, separately, the amount of capital stock, and the surplus and undivided earnings, and the assessor, from such statement and other information he can obtain, including any statement furnished to and information ob-

tained by the auditor of state, which shall be furnished him on request, shall fix the value of such stock, taking into account the capital, surplus and undivided earnings."

As so holding, see *First Nat. Bank v. City Council of Estherville,* 136 Iowa 203. In this respect, the statute was not changed until the enactment of Chapter 63 of the Acts of the Thirty-fourth General Assembly, the purpose of which was to so modify the law with reference to the assessments of bank stocks and moneyed capital as to meet the objections to existing statutes held invalid as applied to national bank stock. *First Nat. Bank v. City Council of Estherville,* 150 Iowa 95, and *Des Moines Nat. Bank v. City of Des Moines,* 153 Iowa 336, based on Federal decisions cited therein. Section 4 of this chapter, as amended by Chapter 114 of the Acts of the Thirty-fifth General Assembly, is Section 1322 of the Code Supplement, 1913, which was substituted in lieu of that section in the Code:

"Shares of stock of national banks and state and savings banks, and loan and trust companies, located in this state, shall be assessed to the individual stockholders at the place where the bank or loan and trust company is located. At the time the assessment is made the officers of national banks and state and savings banks and loan and trust companies shall furnish the assessor with lists of all the stockholders and the number of shares owned by each, and the assessor shall list to each stockholder under the head of corporation stock the total value of such shares. To aid the assessor in fixing the value of such shares, the said corporation shall furnish him a verified statement of all the matter provided in Section 1321 of the Supplement to the Code, 1907, which shall also show separately the amount of the capital stock and the surplus and undivided earnings, and the assessor from such statement shall fix the value of such stock based upon the capital, surplus, and undivided earnings. In arriving at the total value of the

shares of stock of such corporations, the amount of their capital actually invested in real estate owned by them and in the shares of stock of corporations owning only the real estate (inclusive of leasehold interests, if any), on or in which the bank or trust company is located, shall be deducted from the real value of such shares, and such real estate shall be assessed as other real estate, and the property of such corporation shall not be otherwise assessed. A refusal to furnish the assessor with the list of stockholders and the information required under this section shall be deemed a misdemeanor and any bank or officer thereof so refusing shall be punished by a fine not exceeding $500."

The section mentioned, that next previous (Section 1321, Code Supplement, 1913), in connection with that quoted, requires the corporation to provide a verified statement "showing the assets, aside from real estate, and liabilities of such bank  *  *  *  on January first of the current year, as follows:

"1.    The amount of moneys, specifying separately the amount of moneys on hand or in transit, the funds in the hands of other banks, bankers, brokers or other persons or corporations, and the amount of checks or other cash items not included in either of the preceding items;

"2.    The actual value of credits, consisting of bills receivable owned by them, and other credits due or to become due;

"3.    The amount of all deposits made with them by others, and also the amount of bills payable;

"4.    The actual value of bonds and stocks of every kind and shares of capital stock or joint stock of other corporations or companies held as an investment, or in any way representing assets, and the specified kinds and description thereof exempt from taxation;

"5.    All other property pertaining to said business, in-

cluding real estate, which shall be specially listed and valued by the usual description thereof; * * *."

Also, "separately the amount of the capital stock and the surplus and the undivided earnings." This statement is furnished to aid the assessor, but the "assessor from such statement shall fix the value of such stock based upon the capital, surplus, and undivided earnings." This language is mandatory, and defines precisely what shall be considered by the assessor in ascertaining the actual value of the shares of the capital stock. He is not to resort to "other information," or such as may be obtained from the auditor of state, as formerly. If the language employed is to be accorded its ordinary meaning, the assessor is not to go beyond the statement sworn to by the officers of the bank. Reports exacted from the bank to the comptroller of the currency, and published, together with the penalty prescribed in the section quoted, and the aspiration for a good financial standing, furnish ample assurance of an accurate statement from the bank, and the function of an assessor is merely that of correct computation. The capital (not capital stock), to be computed from the statement furnished under Section 1321, Code Supplement, 1913, added to the surplus and undivided earnings, constitutes the value of all the shares; and from this amount is to be deducted the portion of the capital actually invested in real estate owned by the bank, and the shares of stock, such as specified. The remainder, divided by the whole number of shares issued, will be the value at which each share should be assessed. Section 1322-1a provides that:

"For the purpose of placing the taxation of bank and loan and trust company stock and moneyed capital as nearly as possible upon a taxable value relatively equal to the taxable value at which other property is now actually assessed throughout the state as compared with the actual value thereof, it is hereby provided that state, savings and

national bank stock and loan and trust company stock and moneyed capital shall be assessed and taxed upon the taxable value of twenty per cent of the actual value thereof, determined as herein provided, which twenty per cent of the actual value shall be taken and considered as the taxable value and shall be taxed as other property in such taxing district."

The taxable value of all other property is 25 per cent of its actual value (Section 1305, Code Supplement, 1913), and there must have been some reason for fixing the taxable value of bank stocks at 5 per cent less than that of all other property. The reason is found in the fact that the actual value of shares of bank stock, under the sections of the statute quoted, will be likely to more nearly approximate their real worth than assessments of other property, determined in the exercise of the assessor's judgment and discretion. There is little room for error in computing values of money or its equivalent, while the judgment of men greatly varies in fixing upon what property generally is worth, and such property usually is undervalued; and there would seem to have been ample room for this apparent, rather than real, discrimination between reaching the taxable value of shares of bank stock, and in reaching that of other kinds of property.

Enough has been said to indicate that the duty performed by the assessor in ascertaining the value of bank stock is merely ministerial in its nature. All exacted of him is accurate computation. In estimating the value of other property, he is required to determine its value according to his best judgment, and therein exercise a quasi judicial function. See *Tally v. Brown*, 146 Iowa 360. A ministerial act has been defined as "one which a person or board performs upon a given state of facts, in a prescribed manner, in observance of the mandate of legal authority, and

3. TAXATION: assessment: bank stock.

without regard to or the exercise of his own judgment upon the propriety of the act being done." *Flournoy v. City of Jeffersonville,* 17 Ind. 169 (79 Am. Dec. 468, and note in which cases are collected). See, also, *Henry v. Taylor,* 57 Iowa 72; *Benjamin v. District Township,* 50 Iowa 648. As pointed out in 26 Cyc. 160:

"The distinction between merely ministerial and judicial or other official acts seems to be that, where the law prescribes and defines the duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment, the act is ministerial. But where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial. Discretion may be defined, when applied to public functionaries, as the power or right conferred upon them by law of acting officially under certain circumstances, according to the dictates of their own judgment and conscience, and not controlled by the judgment or conscience of others."

Here, the assessor is merely required to make computation from the statements furnished him, and must have, in the performance of his duty as assessor, assessed the shares of stock in the bank in accordance with computation actually made, and therein performed purely ministerial duties; and he should have assessed the bank stock in accordance with such computation. Whether he made a mistake in computation or undertook to exercise his judgment in ascertaining the value of the shares of stock is not material. In either event, the error in the assessment was such as contemplated in Section 1385-b of the Code Supplement, 1913, and the auditor acted within his authority in making the corrections. In *Polk County v. Sherman,* 99 Iowa 60, the mistake was in assessing the land at a higher value than should have been done; and, the county auditor having paid Sherman the taxes levied, and collected on the difference, the county was held entitled to recover the money so paid.

The error was merely in the exercise of judgment by the assessor in determining the value of the property and in failing to enter values necessarily ascertained by computation, concerning which there could have been no controversy. In *Smith v. McQuiston,* 108 Iowa 363, 366, the error was in copying the assessment as made erroneously,—that is, at $3,150, instead of $310; and the error was held to be such as the auditor might have corrected. In the course of the opinion, the court, speaking through Waterman, J., observed that:

"The word 'mistake' [error], as used in this section [1385-b in the Code Supplement], does not include, of course, errors in judgment on the part of the assessor, but is meant, perhaps, to cover all cases where the record does not disclose the true facts, and in which the matter of judgment or discretion is not involved."

Under Section 1366 of the Code Supplement, 1913, the sworn statements of the bank had been filed with the county auditor, and, in connection with the assessment rolls, disclosed the error of the assessor in computing the value of the shares in the bank; and the auditor did not transcend his duties in making the computation as the assessor should have done, and in entering the same in the tax list in lieu of the assessment as returned by the assessor. We reach the conclusion that the county auditor rightly corrected the assessment for 1917, but exceeded his authority in undertaking to correct the assessments of previous years. The decree of the trial court is modified accordingly.—*Modified and affirmed.*

All the justices concur.