SECURITY SAVINGS BANK, Appellant, v. BOARD OF REVIEW
OF THE CITY OF WATERLOO, Appellee.

**TAXATION:**   Shares of Bank Stock—Real Estate Deduction.   The
1   method provided by Sec. 1322, Code Supp., 1913, for the assess-
ment of the shares of stock of national, state, and savings
banks and loan and trust companies is, in view of its legis-
lative history, and purpose to render absolutely uniform the
method of assessing taxes on banking capital, exclusive of any-
thing in the prior section of the Code of 1897, known as Sec.
1324.  It follows that from the total amount of capital, surplus,
and undivided profits there should be deducted the amount of
capital *actually* invested in real estate, and not the amount
which the assessor has seen fit to place on such real estate for
taxation purposes. ·

**TAXATION:**   Double Taxation on National Banks.   Principle rec-
2   ognized that there can be no double taxation on the shares
of stock of national banks.

*Appeal from Blackhawk District Court.—*H.   B.   BOIES,
Judge.

JULY 6, 1920.

IN the district court, this was an appeal from the board
of review of the city of Waterloo.  The question involved
pertained to the assessment of the shares of stock of the
plaintiff bank.   Such question is whether, in fixing the
value of the shares of stock of plaintiff's bank for the pur-
pose of assessment, the assessor should deduct from the
amount of the moneyed capital, including surplus and un-
divided earnings, the amount of such capital actually in-
vested by the bank in real estate, as provided by Section
1322 of the Supplement to the Code, 1913, or whether such
deduction for the purpose of valuation of the shares should
be confined to the assessed value of such real estate, as pro-

vided by Code Section 1324. The trial court held that the measure of reduction should be the assessed value, and affirmed the action of the board of review accordingly. The plaintiff has appealed.—*Reversed.*

*Pike, Sias & Zimmerman* and *Pickett, Swisher & Farwell,* for appellant.

*Burr A. Brown,* for appellee.

EVANS, J.—To put the question concretely, the plaintiff bank had a total moneyed capital, including capital stock, surplus, and undivided earnings, of $127,720. The amount

1. TAXATION: shares of bank stock: real estate deduction.

of this moneyed capital actually invested in real estate (mostly in Waterloo) was $67,-886. The assessed value of this real estate was $40,260. These facts are not in dispute. The plaintiff bank furnished to the assessor the verified statement required by Section 1322, which showed a total actual value of capital, over and above the amount invested in real estate, of approximately $60,000. That is to say, the sum of $67,886 was deducted from $127,720. To the total actual value thus disclosed by such verified statement, the assessor added the sum of $27,626, being the difference between the amount actually invested in real estate ($67,-886) and the amount of value at which such real estate was assessed ($40,260). The whole issue is involved in this item of $27,626 thus added by the assessor.

The plaintiff claims that, in the valuation of shares for the purpose of taxation, the sum of $67,886 should be deducted from the sum total of the capital stock, surplus,. and undivided earnings; whereas the defendant contends that such deduction should be $40,260, and no more. If, in the valuation of shares for the purpose of taxation, it is requisite, under the statute, to deduct from the total capital the amount "actually invested," then plaintiff should prevail. If, on the other hand, the amount of such deduction should be the "assessed value" of the real estate, then

the defendant should prevail, and the order of the trial court should be affirmed.   The question thus presented is controlled primarily by Section 1322 of the Supplement to the Code, 1913, which is as follows:

"Shares of stock of national banks and state and savings banks, and loan and trust companies, located in this state, shall be assessed to the individual stockholders at the place where the bank or loan and trust company is located.   At the time the assessment is made the officers of national banks and state and savings banks and loan and trust companies shall furnish the assessor with lists of all the stockholders and the number of shares owned by each, and the assessor shall list to each stockholder under the head of corporation stock the total value of such shares.   To aid the assessor in fixing the value of such shares, the said corporation shall furnish him a verified statement of all the matter provided in Section 1321 of the Supplement to the Code, 1907, which shall also show separately the amount of the capital stock and the surplus and undivided earnings, and the assessor from such statement shall fix the value of such stock based upon the capital, surplus, and undivided earnings.   In arriving at the total value of the shares of stock of such corporations, the amount of their capital actually invested in real estate owned by them and in the shares of stock of corporations owning only the real estate (inclusive of leasehold interests, if any) on or in which the bank or trust company is located, shall be deducted from the real value of such shares, and such real estate shall be assessed as other real estate, and the property of such corporation shall not be otherwise assessed. * * *"

Looking to this section of the statute alone, there could be little room for argument.   It unequivocally requires a deduction of the amount of "capital actually invested in real estate."   We need not enter here into an analysis of the provisions of this particular section, because the contention of the defendant, appellee, is made to rest, not upon the terms of this section, but upon the provisions of

Section 1324, which reads as follows:

"If the assessor is not satisfied with the appraisement and valuation furnished as provided in the preceding sections, he may make a valuation of the shares of stock based upon the facts contained in the statements above required, or upon any information within his possession, or that shall come to him, and shall, in either case, assess to the owners the stock at the valuation made by him. If the officers of any corporation refuse or neglect to make the statement required, the assessor shall make a valuation of the capital stock of the defaulting corporation from the best information obtainable. In deducting, under the provisions of this chapter, the value of real estate from the actual value of the properties, shares or capital stock of any person, firm, association or corporation, the actual value at which said real estate is valued by the assessor or other taxing officer or body where the same is assessed shall be the value thereof."

It will be noted that the foregoing section presents a different yardstick for the measure of the amount of deduction than is presented in Section 1322. The contention for appellee is that this section has the effect to qualify or to interpret Section 1322. It is further contended that we so construed the effect of Section 1324 in *In re Appeal of Valley Investment Co.*, 152 Iowa 84. A perusal of the two sections above quoted will clearly disclose that, if the two sections are to be deemed operative upon the same subject-matter, they present conflicting standards of measure. The first question, then, which arises, is: Does Section 1324 control or qualify the provisions of Section 1322 at the point of conflict? In the *Valley Investment Co.* case, 152 Iowa 84, a somewhat similar conflict was presented, as between Code Sections 1323 and 1324. We held that Section 1324 was controlling, in that it was more definite and mandatory than was Section 1323. The argument for appellee at this point is that the same reasoning adopted in the cited case would be likewise applicable to the point of conflict between Sections 1324 and 1322. The argument is

legitimate, so far as it goes, and would be very cogent, were it not for the legislative history of Section 1322. To this history we turn.

Sections 1321, 1322, 1323, and 1324, as originally enacted, and as they appeared in the Code of 1897, were parts of the same act, and carried the same legislative history. Section 1321 provided a method of assessment for private banks, or individuals doing a banking business. Section 1322 dealt with corporate banks, including national, state, and savings. Sections 1323 and 1324, dealt with the assessments of corporations generally, excepting, however, such as were "otherwise provided for in this act." Under Section 1322, a different method was provided for assessing the shares of a national bank from that provided for assessing the shares of a state bank. In the first, they were assessed to the shareholder, and in the second, assessed to the bank. The only right which the state had to tax national banks at all was by the legislative permission of Congress, as expressed in the Federal statute, Rev. Stat., Section 5219 (U. S. Comp. St., Sec. 9784), as follows:

"Section 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

In *Home Savings Bank v. City of Des Moines,* 205 U. S. 503, the Supreme Court of the United States held that our Section 1322 was discriminatory as to national banks, and violative of Federal statute, Section 5219, and therefore inoperative as to national banks. The assessment involved in that case was set aside. The consequential result of that holding was that it left the state without any adequate statute for the assessment of the shares of national bank stock, even within the permission of the Federal statute, Section 5219. We were compelled to so hold in the case of *First Nat. Bank v. City Council,* 150 Iowa 95. In our opinion in that case, we invited the attention of the legislature, then sitting, to the subject. The immediate result was new legislation on the subject, being Chapter 63 of the Acts of the Thirty-fourth General Assembly. By this enactment, Section 1322 was repealed. In lieu thereof, the present Section 1322 was enacted, as Section 4 of such Chapter 63. Section 1321 was also amended. Such legislation contained no reference to the existing Sections 1323 and 1324. The clear purpose of this new legislation was to render uniform the statutory method of assessment for taxes on banking capital, whether corporate or private, and thereby to conform to the requirement of the Federal statute, Section 5219. Under the new Section 1322, the method of assessment for taxation of national bank stock is precisely the same as that of other bank stock. The plaintiff in this case is not a national bank. But we must construe the statute as to it to precisely the same effect as if it were such. If we were to adopt a construction herein, as to this plaintiff, which, if applied to a national bank, would be violative of the Federal statute, Section 5219, we should thereby set a precedent which we could not follow, in the event that a national bank were the litigant. We should thereby destroy the very uniformity aimed at by the statute, as being essential to its operative power upon national banks. Therefore, though the plaintiff is not a national bank, it is entitled to insist upon a uniform construction of the statute, which shall be operative as against *all* banks. For this

reason, we must, in construing our own statute, take account of the construction by the United States Supreme Court of the Federal statute. The significance of this feature of the case we shall note later.

Turning, now, to our present Section 1322, Are its specific provisions to be nullified, qualified, or controlled by Section 1324? It is urged that Section 1324 is *in pari materia* with Section 1322. That it was *in pari materia* with the original Section 1322 may be conceded. That the present Section 1322 is legislation subsequent to Section 1324 must also be conceded. By reason of their conflicting terms, one of these sections must be deemed dominant, and controlling of the other. Though it be true that later legislation must be construed in the light of existing statutes, it is also ordinarily true that, where a conflict is disclosed, the later legislation is deemed to such extent to qualify the earlier. ·

In order to insure unquestionable uniformity of method, the present Section 1322 specified the very manner of computation, for the purpose of assessment. It laid this method of computation as a mandate upon the assessor, and deprived him of his quasi judicial power in the matter of such assessment of bank stock. This was our holding in *First National Bank of Remsen v. Hayes,* 186 Iowa 892. In that case, we sustained the action of the county auditor, who doubled a certain assessment of bank stock, as returned by the assessor and board of review, by applying thereto the computation provided for in this section. We held, in terms, that the duty of the assessor was one of computation and obedience to the specifications of this section, and that it was ministerial only. The assessor having failed to follow the mandate of such section, the auditor was permitted to correct such assessment, as for a mistake in computation, and to enter the assessment of the shares accordingly. In that case, we said:

"This statement is furnished to aid the assessor, but the 'assessor from such statement shall fix the value of such stock, based upon the capital, surplus, and undivided earn-

ings.' This language is mandatory, and defines precisely what shall be considered by the assessor in ascertaining the actual value of the shares of the capital stock. He is not to resort to 'other information,' or such as may be obtained from the auditor of state, as formerly. If the language employed is to be accorded its ordinary meaning, the assessor is not to go beyond the statement sworn to by the officers of the bank. Reports exacted from the bank to the comptroller of the currency, and published, together with the penalty prescribed in the section quoted, and the aspiration for a good financial standing, furnish ample assurance of an accurate statement from the bank, and the function of an assessor is merely that of correct computation. The capital (not capital stock), to be computed from the statement furnished under Section 1321, Code Supplement, 1913, added to the surplus and undivided earnings, constitutes the value of all the shares; and from this amount is to be deducted the portion of the capital actually invested in real estate owned by the bank, and the shares of stock, such as specified. The remainder, divided by the whole number of shares issued, will be the value at which each share should be assessed. * * * There is little room for error in computing values of money or its equivalent, while the judgment of men greatly varies in fixing upon what property generally is worth, and such property usually is undervalued; and there would seem to have been ample room for this apparent, rather than real, discrimination between reaching the taxable value of shares of bank stock, and in reaching that of other kinds of property. Enough has been said to indicate that the duty performed by the assessor in ascertaining the value of bank stock is merely ministerial in its nature. All exacted of him is accurate computation."

To adopt the position contended for by appellee would require an overruling of the cited case. Further consideration of the question, in the light of present arguments, confirms our confidence in the soundness of the cited case. The language of the statute is specific. The rule laid down appeals to the sense of justice. If it be true (and the fact

is stipulated) that the bank had invested $67,000 of its moneyed capital in real estate, why should that part of its capital not be regarded as bearing its full share of taxation in the form of real estate? If such real estate was assessed too low, there were power and duty in the assessor to increase it by direct method. The purport of the action of the assessor herein was not to increase the assessment of the real estate, but to add a deficiency as an asset to the moneyed capital. If $40,260 was the full value of the real estate, then the bank had lost $27,000 by its investment. It was its privilege and its duty to charge off such loss against its resources. This would have made a *reduction* of $27,000 in its totals. What equitable reason could there be for *adding* $27,000 to such totals, for the purpose of taxation?

If, on the other hand, the property was worth the full amount invested in it, as presumably it was, and if, nevertheless, $40,260 was a just assessment of it, it was because such assessment represented the proportion of value at which other real estate was assessed. Presumably, the assessment was just; otherwise, the assessor would have increased it. The bank could have resisted an increase, if it could show that its assessment at $40,260 was in the proportion at which other real estate was assessed. The net effect of the action actually taken by the assessor was that, whereas the real estate was justly assessed, so that no increase of assessment thereon could have been justly made, nevertheless, an increase was indirectly effected, by adding to the moneyed capital an item of $27,000 which did not, in fact, exist anywhere.

Now, suppose that this assessment had been attempted under Section 1321, against a private individual engaged in the banking business. Section 1324 does not purport to reach Section 1321, nor to apply to it in any way. If the private individual, having $100,000, had invested $67,000 in real estate, he could be assessed for moneyed capital only for the $33,000 remaining. This would be in accord with Section 1321. This is beyond debate. If this disputed item

of $27,000 herein could not have been assessed against a private banker, under Section 1321, then, under the Federal statute Section 5219, it could not be assessed against the shares of a national bank. If it could not be assessed against the shares of a national bank, uniformity in the application of the statute would require the same rule to operate in favor of the plaintiff bank.

There is a further objection to the position of appellee. To assess $67,000 worth of real estate at the full rate at which other real estate is assessed, and then to add to the assessment roll, as an item 'of moneyed capital, the full difference between assessed value and actual value, is an attempt to assess the real estate of a bank at full value, even though all other real estate be assessed on a lower basis. It savors of double taxation. It is in the power of the legislature to make double taxation, but the courts are slow to construe a statute to that end. Furthermore, there can be no double taxation upon the shares of national bank stock, because of the limitations provided in the Federal statute, Section 5219. The United States Supreme Court has held that this section limits the power of the state as to such stock to "one taxation." *Bank of California v. Richardson,* 248 U. S. 476 (39 Sup. Ct. Rep. 165). It has held that, under such section of the Federal statute, the "stock interest" is *one,* whether assessed against the stockholder or the bank, and that such interest is "subject to one taxation, by the methods which it provided." In that case, the National Bank of California was a stockholder in the Mills National Bank. As such stockholder, it was assessed under the statute of California. The shares of the stockholders in the National Bank of California were valued, for the purpose of assessment, against the shareholders, without any deduction of the amount invested by the Bank of California in the stock of the Mills National Bank. It was held by the Supreme Court that this was double taxation, and in violation of Section 5219, notwithstanding that the tax upon the stock of the Mills National

*2. TAXATION: double taxation on national banks.*

Bank was charged·against the Bank of California, and not against its stockholders, and that the tax upon the shares of the Bank of California was charged, not against the bank, but against its shareholders. It was said that to tax these shares first to the Bank of California, as the stockholder, and afterward to include the same in fixing the value of its own shares, for the purpose of taxing its shareholders, was "to overthrow the very fundamental ground upon which the taxation of stockholders must rest."

To quote further:

"To say that the two taxes, the one levied on the bank, as a stockholder in the Mills National Bank, and the other levied on the stockholders of the California Bank, were valid because a taxation of different persons, the California Bank, on the one hand, and the stockholders of the California Bank, on the other, serves only to emphasize the plain disregard of the statute which would result from the enforcement of the taxes in question.  *  *  *  We do not stop to point out the double burden resulting from the taxation of the same value twice, which the assessment manifested, as to do so could add no cogency to the violation of the one power to tax by the one prescribed method conferred by the statute, and which was the sole measure of the state authority."

The final holding was that the tax on the shares of the Mills National Bank, to the Bank of California as a stockholder, was proper, but that the same value could not be again taxed to the stockholders, in the guise of including the same in the valuation of their shares.

The construction put by the high court upon the Federal statute is, of course, binding upon us. It is clear therefrom that, if the plaintiff were a national bank, the $67,000 of its moneyed capital being actually invested in real estate, and such real estate being fully taxed against the bank, as other real estate, such investment could not again be included in the valuation of the shares for the purpose of taxing the shareholders.

Our conclusion is that, if Section 1324 could originally

have been held operative upon the subject-matter of the original Section 1322, it does not follow that it is operative upon the subject-matter of the present Section 1322; that it is not effective to nullify or qualify such later legislation; that, if the two sections are to be deemed in conflict, the later, rather than the earlier, legislation will control; that Section 1322 must be given full effect according to its terms; that the construction put upon such section in *First Nat. Bank v. Hayes,* supra, should be adhered to; that there is no real conflict between the latter case and the *Valley Investment Co.* appeal, 152 Iowa 84, there being no occasion, in the latter case, to consider the effect of the later legislation. For these reasons, the judgment below must be and is, accordingly,—*Reversed.*

WEAVER, C. J., PRESTON and SALINGER, JJ., concur.