NORTHWESTERN BANK OF IRETON, Appellee, v. WILLIAM VAN ROEKEL, County Auditor, Appellant.

TAXATION: Assessment—Unallowable Correction. The county auditor may not, under the guise of correcting the assessment of a private banker, impose an assessment on bills receivable which the banker had rediscounted for full value to his correspondent bank, even though the rediscounts were, in a sense, held by the correspondent as collateral, because of the mutual contemplation of the banker and

the correspondent that the banker would in time redeem said discounts.

COSTS: Persons Liable—Persons Acting Officially. Costs should not be taxed against a county auditor in a matter in which he acts officially, in good faith, and on the advice of counsel. (See Book of Anno., Vol. 1, Sec. 11622, Anno. 54.)

Headnote 1: 37 Cyc. p. 827. Headnote 2: 37 Cyc. p. 1278.

*Appeal from Sioux District Court.*—WILLIAM HUTCHINSON, Judge.

FEBRUARY 16, 1926.

REHEARING DENIED SEPTEMBER 21, 1926.

In the district court this was a proceeding to contest the validity of an order made by the county auditor, purporting to correct the assessment for taxation made by the assessor against the plaintiff bank. Such order by the county auditor increased the assessable value of the capital of the plaintiff bank. Upon hearing, the district court set aside the order made by the county auditor, and confirmed the assessment as made by the assessor. From such order the county auditor has appealed.—*Modified and affirmed.*

*Ben J. Gibson,* Attorney-general, *Herbert A. Huff,* Assistant Attorney-general, and *Charles B. Hoeven,* for appellant.

*C. W. Pitts,* for appellee.

EVANS, J.—The plaintiff is a private bank, which is owned and operated by two persons, who, for the purpose of this case, may be deemed to constitute a quasi partnership. A capital of

1. TAXATION: assessment: unallowable correction.

$10,000 was originally devoted to the enterprise. At the time of the assessment in question, this had increased by accruing benefits to an additional amount of $6,439. This increase, however, represented the actual amount invested in real estate; so that, upon the books of the bank, the original capital still stood as the taxable capital of the concern. The assessment in question was

made as of January 1, 1923. It was so made pursuant to a full itemized statement by the bank, and in the same manner as it had been made successively for 12 years past, and showed a net taxable capital of $10,000. The act of the county auditor which is complained of raised the taxable value to $60,000. This was done by eliminating from the computation an item of $50,000 claimed by the bank as "bills payable," and so done on the theory that a private bank was entitled to no deduction for taxable purposes because of *"debts."* The assessment was made pursuant to the provisions of Section 1321, Code Supplement, 1913, which required from private bankers the following statement:

"1. The amount of moneys, specifying separately the amount of moneys on hand or in transit, the funds in the hands of other banks. bankers, brokers or other persons or corporations, and the amount of checks or other cash items not included in either of the preceding items;

"2. The actual value of credits, consisting of bills receivable owned by them, and other credits due or to become due;

"3. The amount of all deposits made with them by others, and also the amount of *bills payable;*

"4. The actual value of bonds and stocks of every kind and shares of capital stock or joint stock of other corporations or companies held as an investment, or in any way representing assets, and the specific kinds and description thereof exempt from taxation;

"5. All other property pertaining to said business, including real estate, which shall be specially listed and valued by the usual description thereof; *the aggregate actual value of moneys and credits, after deducting therefrom the amount of deposits,* and the aggregate actual value of bonds and stocks, after deducting the portion thereof otherwise taxed in this state, and also the other property pertaining to the business, shall be assessed as provided by Section 1305 of this chapter, not including real estate, which shall be listed and assessed as other real estate."

Section 1305, Code Supplement, 1913, provides:

"All property subject to taxation shall be valued at its actual value, which shall be entered opposite each item, and shall be assessed at twenty-five per cent of such actual value."

The point made by the appellant is that Subsection 5 of Section 1321 provides the manner of ascertaining the taxable value of the bank capital; and that it does not provide that "bills payable" may be deducted from the aggregate of moneys and credits. The point thus made is fortified in its plausibility by the fact that the previous statute for which Section 1321 was substituted, included the word "debts" in conjunction with the word "deposits," as being deductible from the aggregate of money and credits. The word "debts" having been omitted from Section 1321, it is naturally argued that the fact of such omission is to be considered, in construing Section 1321, as forbidding the inclusion of "debts" among the deductions from the aggregate of moneys and credits. The discussion in the briefs has taken a wide range, and has been very complete, both on the question of statutory construction and on the question of the possible unconstitutionality of the statute, if construed as contended by appellant.

Upon the record before us, we do not find it necessary to go into these larger questions. The facts in the case are very simple, and are wholly undisputed, and in the main are stipulated. The facts, taken as thus appearing, present only a question of bookkeeping and of method of stating an itemized accounting for the purpose of striking a balance. There is no claim that the plaintiff concealed or withheld from the assessor any information as to its taxable property. It furnished an itemized statement, as required by Section 1321. For the purpose of this case, we have occasion to consider only two items in such statement. The item of "bills receivable" stated was, in round numbers, $225,000. As against this, there appeared on the other side of the account the item of $50,000 of "bills payable." These items of bookkeeping were subject to explanation, and they were clearly explained. The truth of the explanation is not assailed. The plaintiff did not, in fact, on January 1, 1923, have $225,000 of discounts or "bills receivable." What it actually had, was $175,000. Among the "bills receivable" which were listed in the total of $225,000 were $50,000 which had been rediscounted to plaintiff's correspondent bank at Chicago. These were duly indorsed and delivered to the correspondent bank, and were held by such bank on January 1st. The plaintiff had received full consideration therefor from time to time as the re-

discounting proceeded. Notwithstanding that the correspondent bank at Chicago had the full ownership and dominion of the rediscounts, it was, nevertheless, the mutual purpose of the parties that the plaintiff bank would redeem or take back these discounts by paying therefor, and that it would at all times hold the correspondent bank harmless from loss thereon. It executed to the correspondent bank either its promissory note or its certificate of deposit for the amount received for the discounts, and the rediscounts were actually treated as in the nature of collateral. This explains why the plaintiff bank carried upon its books, as a matter of bookkeeping, $50,000 of "bills receivable" which it had already rediscounted for full value. It attended to the collection of these bills and, for the purpose of collection, redeemed the same. This method of bookkeeping was honest and proper, and in accord with bank usage. It concealed nothing; but, on the contrary, revealed at all times the exact character and extent of the bank's assets. Its plain disclosure was that the moneys and credits of this bank were $175,000, and no more. The form of bookkeeping adopted by the plaintiff could make its moneys and credits neither greater nor less. The most that can be said is that the statement furnished, showing moneys and credits to the amount of $225,000, was evidence binding upon the plaintiff that such *was* the amount of its moneys and credits. But it was by no means conclusive. The facts underlying the bookkeeping are undisputed, and were fully known to the assessor and to the board of review that approved the assessment, and were made known to the auditor at the time he changed the assessment. In view of the fact, therefore, that the sum total of moneys and credits held by the bank on January 1st was $175,000, we have no occasion to deal with the more intricate questions discussed by counsel. We may say at this point, however, that since 1911 it has been the special objective of our legislation to attain substantial uniformity in the method of assessing state, national, and private banks. We have kept this objective before us in all our consideration of the legislation. *Security Sav. Bank v. Board of Review,* 189 Iowa 463; *Des Moines Nat. Bank v. Fairweather,* 191 Iowa 1240. Section 1321, as amended (Section 6997, Code of 1924), now requires that private banks be assessed on the "same basis as bank stock." We deem it plain that the assessment made by the assessor con-

formed to this objective, and that the action of the auditor was a clear departure therefrom. This was the conclusion reached by the trial court.

Its order will be affirmed, except on the question of costs. We do not think that the costs should have been taxed against the auditor personally. He acted officially, and in good faith, and under the advice of counsel. Whether the costs should be taxed to the county or to the state is a question not discussed in the briefs. The question of taxation of costs may be presented to us hereafter, on motion of either party. It is now reserved from decision.

2. COSTS: persons liable: persons acting officially.

With this modification, the order entered below is affirmed. —*Modified and affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.