MANNINGS BANK, Appellant, v. C. E. ARMSTRONG, County Auditor, Appellee.

**TAXATION:** Assessment—Correcting Assessment of Private Banker.
1  The county auditor may, on proper notice and hearing, and before a tax is paid, correct the erroneous action of the assessor in deducting the debts of a *private* banker from the value of the banker's taxable property. (Sec. 1321, Code Supp., 1913.)

**TAXATION:** Assessment—Moneyed Capital—Applicable Statute. Sec.
2  1322-1a, Code Supp., 1913 (now repealed), was not applicable to the assessment of the banking assets of a private banker.

**TAXATION:** Assessment—Discrimination as to Deductions. No unal-
3  lowable discrimination is worked by a statute which, in the assessment of the *stock* of an incorporated bank, authorizes a deduction for certain liabilities, and does not allow such deduction in the assessment of the bank assets of a *private banker.*

Headnote 1: 37 Cyc. p. 1094.  Headnote 2: 37 Cyc. p. 988.  Headnote 3: 37 Cyc. p. 751.

*Appeal from Van Buren District Court.—*D. M. ANDERSON, Judge.

DECEMBER 16, 1926.

REHEARING DENIED OCTOBER .18, 1927.

The county auditor of Van Buren County increased the assessment on the property of appellant, from which action appeal was taken to the district court, where the action of the auditor was confirmed. Hence the appeal here.—*Affirmed.*

*A. L. Heminger* and *Cornell & McBeth,* for appellant.

*Emily L. Newbold,* County Attorney, and *Newbold & Newbold,* for appellee.

ALBERT, J.—Appellant bank is a private bank, owned wholly by S. W. Manning. In due course of procedure, an assessment was returned on this bank, payable in the year 1923.

1. TAXATION: assessment: correcting assessment of private banker.

Before Manning had paid these taxes, on the 2d day of June, 1923, the county auditor of Van Buren County served notice on appellant, advising that he would correct the assessment, increasing the net amount to be assessed to plaintiff in the sum of $56,869.92. Timely objections were filed with the auditor to the proposed raise in the assessable value of the property of appellant, which were, on the 14th day of June, overruled by the auditor, and the taxing record corrected by the auditor in accordance with his notice, on the 2d day of June, 1923. Appellant duly appealed from this action of the auditor's to the district court of Van Buren County, Iowa, where the action of the auditor in so raising this assessment was confirmed.

Without burdening the record with a copy of the returns filed by the bank with the assessor, it is sufficient to know at this point that the same was in statutory form, and among other items set out therein was the amount owed for borrowed money, $52,500, and an item of undivided profits, of $4,369.92. The assessor deducted these two items from the assets of the bank, and the original assessment was returned accordingly. The contention of the auditor was that this was an error, that these two items should not have been deducted; and the sum total of the action of the auditor was to increase the amount of tax by the sum of $1,813.35.·

Under the Code of 1851, the only provision with reference

to taxation of banks was Section 456, which lists the property subject to taxation, in which are included "stocks or shares in any bank or company, incorporated or otherwise, and whether incorporated by this or any other state, and whether situate in this state or not."

There was no special provision in that Code for taxation of private banks as such.

Section 720, Revision of 1860, lists property subject to taxation, and included property belonging to any bank or company, incorporated or otherwise, whether incorporated by this or any other state. It is equally true that in this Code there was no statutory provision for assessing private banks as such.

The provision in Section 812, Code of 1873, is identical with the provision in the Code of 1860. This section was amended by Chapter 63, Acts of the Fifteenth General Assembly, and when thus amended, reads as follows:

"All taxable property shall be taxed each year, and personal property shall be listed and assessed each year, in the name of the owner thereof on the first day of January, [except moneys and credits of associations, organized under the general incorporation laws of this state, for the purpose of transacting a banking business, and moneys and credits of private bankers, and others who have loaned money, bought notes, mortgages, or other securities within the year previous to the time of assessing; in every such instance the average value of the moneys and credits which have been in the possession or under the control of the person making the list during the year previous to the time of making said assessment, shall be listed for taxation]. Real property shall be listed and valued in the year eighteen hundred and seventy-three and each second year thereafter, and shall be assessed at its true cash value, having regard to its quality, location, and natural advantages, the general improvement of the vicinity, and all other elements of its value; and in each year in which real estate is not regularly assessed, the assessor shall list and value any real property not included in the previous assessment."

The part inclosed in brackets above is the amendment of the fifteenth general assembly. This was the first time reference was made to private banks as such, in the taxation laws of this state. The statute remained in this condition until the adoption of the

Code of 1897, when for the first time appears a special section governing the taxation of private banks as such. That section reads as follows:

"Section 1321.   Private banks or bankers, or any persons other than corporations hereinafter specified, a part of whose business is the receiving of deposits subject to check, on certificates, receipts, or otherwise, or the selling of exchange, shall prepare and furnish to the assessor a sworn statement, showing the assets, aside from real estate, and liabilities of such bank or banker on January first of the current year, as follows:

. "1.   The amount of moneys, specifying separately the amount of moneys on hand or in transit, the funds in the hands of other banks, bankers, brokers or other persons or corporations, and the amount of checks or other cash items not included in either of the preceding items;

"2.   The actual value of credits, consisting of bills receivable owned by them, and other credits due or to become due;

"3.   The amount of all deposits made with them by others, and also the amount of bills payable;

"4.   The actual value of bonds and stocks of every kind and shares of capital stock or joint stock of other corporations or companies held as an investment, or in any way representing assets, and the specific kinds and description thereof exempt from taxation;

"5.   All other property pertaining to said business, including real estate, which shall be specially listed and valued by the usual description thereof;

"The aggregate actual value of moneys and credits, after deducting therefrom the amount of deposits and of debts owing by such bank as provided in this chapter, and the aggregate actual value of bonds and stocks, after deducting the portion thereof exempt, or otherwise taxed in this state, and also the other property pertaining to the business, shall be assessed at twenty-five per cent of the actual value of the same, not including real estate, which shall be listed and assessed as other real estate."

Chapter 30, Acts of the Twenty-seventh General Assembly, amended the above section by striking out of Paragraph 5 of Section 1321, after the word "assessed," in the seventh line, down to and including the word "same," in the eighth line, and

substituting in lieu thereof the following: "as provided by Section 1305 of this chapter." Section 1305 referred to, provided that all property subject to taxation shall be valued at its actual value, and assessed at 25 per cent of such actual value.

This section was again amended in Chapter 63, Section 3, Acts of the Thirty-fourth General Assembly, by striking out from lines 4 and 5 of Subdivision 5 the following words: "and of debts owing by such bank as provided in this chapter," and also by striking from line 6 of such Subdivision 5 the words "exempt, or." This section, with certain amendments, became Section 6997, Code of 1924; but in the case at bar we are not interested in the section as it appears in the Code of 1924, because the questions involved arose prior to the time the Code of 1924 went into effect.

It is to be noticed that in Subdivision 5 of the original Section 1321, the right was given to deduct, among other things, "debts owing by such bank as provided in this chapter." The other provision in the chapter referred to is Section 1311, Code of 1897, a part of which reads:

"In making up the amount of money or credits which any person is required to list, or to have listed or assessed, including actual value of any building and loan shares, he will be entitled to deduct from the actual value thereof the gross amount of all debts in good faith owing by him."

Section 1322, Code of 1897, provided for a method of assessing national, state, and savings banks. In *Home Sav. Bank v. City of Des Moines*, 205 U. S. 503, the United States Supreme Court held that this statute was inoperative as to national banks, on account of its being violative of Section 5219 of the Federal statutes. Subsequent to this decision, Chapter 63, Acts of the Thirty-fourth General Assembly, above referred to, was passed. We said, in *Security Sav. Bank v. Board of Review*, 189 Iowa 463:

"The clear purpose of this new legislation was to render uniform the statutory method of assessment for taxes on banking capital, whether corporate or private, and thereby to conform to the requirement of the Federal statute, Section 5219."

In the aforesaid Acts of the Thirty-fourth General Assembly, the legislature struck from Subdivision 5 of Section 1321 the provision which gave private banks the right to deduct its

debts; and it is urged that this act of the legislature's takes from private banks the right to deduct the same from the actual value of its aggregate assets, in determining the taxable value of the property of a private bank.

The first question urged upon our attention is that the auditor had no authority to increase this assessment, because the action of the assessor in making the original assessment was judicial, and not ministerial.

In the case of *First Nat. Bank v. Hayes,* 186 Iowa 892, we had this question before us. It is true that in that case we were not considering the question of assessment of private banks, but were considering the succeeding section, 1322, of the Code, governing state, savings, and national banks. We there held that the stock in these banks was assessable to the private owner, and that the method of determining the assessable value of the stock was marked out by the statute, and as there marked out, the bank was required to furnish a sworn statement, showing various matters, among which were the capital stock, surplus, and undivided profits, and the assessor was directed to use these three items as the basis for his assessment, and none other; and we said that, under this method of reaching the assessable value of the property, nothing was left for the assessor but a purely mathematical calculation, and under such circumstances, the duties of the assessor would be purely ministerial, and in no sense judicial, and therefore that correction of mathematical mistakes could be made by the county auditor.

We turn now to Section 1321, as amended, governing private banks, heretofore set out. The last paragraph of said section provides that the assessor shall take the aggregate actual value of moneys and credits, less the amount of deposits, and the aggregate actual value of bonds and stocks, less the portion thereof otherwise taxed in this state, and other property, except real estate, pertaining to the business, shall be assessed and taxed on the same basis as bank stock. A reading of this section shows that the private bank or banker is required to place his own valuation on the various items specified in Paragraphs 2, 3, 4, and 5, and the valuations thus placed by him are binding on him.

It is therefore apparent that, after this sworn statement is filed with the assessor, setting out these various items and the valuation placed thereon by the bank itself, he has no discretion

in the matter, and is bound to take the values thus fixed by the bank. The duties of the assessor, under such circumstances, are practically identical with those under Section 1322, above referred to, as ruled in the *Hayes* case, supra. It must necessarily follow, therefore, that the duties of the assessor, when presented with a private bank statement of this kind, are simply to make a mathematical calculation to determine the assessable value of the property, identically the same as it was in state, savings, and national banks. The contention of appellant as to this question must be overruled, on the authority of the *Hayes* case.

It is further urged, however, that in the *Hayes* case the question was the assessing of the stock of the bank, whereas in the present case it is a question of assessment of property, and therefore a different rule should be applied. We can see no distinction whatever in the application of these two sections as to the duties of the assessor. Further as to this proposition, see *Des Moines Nat. Bank v. Fairweather*, 191 Iowa 1240; *Security Sav. Bank v. Board of Review*, 189 Iowa 463.

It is true that, prior to the passage of Chapter 63, Acts of the Thirty-fourth General Assembly, and under our holdings made before that act, the private bank or banker had the right to deduct from his total assets his liabilities and government bonds or securities that were exempt; but that right was removed by the passage of the aforesaid Chapter 63, Acts of the Thirty-fourth General Assembly, and thereafter this right of deduction for debts or liabilities no longer existed.

Section 1322-1a, Code Supplement, 1913, provides for the method of assessment of "moneyed capital," and we have the benefit in the briefs of a very able discussion of assessments of "moneyed capital," apparently on the theory that this section should be considered in connection with Section 1321, above set out. A reading of these sections, as amended, shows that the legislature had in view the marking out of the method of assessment of private banks and bankers, as delineated in Section 1321. In Section 1322, it is marked out for the assessment of national, state, and savings banks, and in the aforesaid Section 1322-1a, a, method of assessing other "moneyed capital," coming in competition with national banks, to meet the requirements of Section 5219 of the United States statute. With these provi-

2. TAXATION: assessment: moneyed capital: applicable statute.

sions, it is apparent, therefore, that the private bank and banker are not covered by Section 1322-1a; hence the question of the method of assessment of other moneyed capital is not relevant to the question under consideration.

It is next urged that the method marked out for the assessment of national, state, and savings banks in the aforesaid Section 1322 permits the deduction of exempt securities, and also other liabilities, in determining the value of the stock, and that, as a private bank is not permitted to make these same deductions, this amounts to a discrimination against the private banker. We discussed and disposed of this question thoroughly, from a little different angle, in the case of *Head v. Board of Review,* 170 Iowa 300, wherein it was claimed that permitting private banks, under the statute then existing, to make deductions for liabilities and exemptions, and not affording the same privilege to national banks, was a discrimination. We there held that there was no such discrimination as that a national bank could complain; and if it were not a discrimination in that case, we are unable to see how it could be treated as a discrimination in this case.

3. TAXATION: assessment: discrimination as to deductions.

The sum total of this case is that appellant bank furnished a sworn statement, as required by statute, and therein showed an item of borrowed money. The assessor, in making his calculation, deducted this item of borrowed money, and, his books having passed the board of review, the county auditor, in the first instance, placed the same on the county books accordingly, but afterwards, having discovered that there was no authority for deducting this item of borrowed money in calculating an assessment value of the bank, he, by notice, put the same on the books, and figured the ordinary tax against the same; and as we have held that the act of the assessor in making and determining the taxable value of this property was merely ministerial, there can be no doubt, under our holdings, but that the auditor had the right, under Section 1385-b, Code Supplement, 1913, to do what he did. It is to be remembered that in this case there is an entire paucity of evidence as to the borrowed money. There is nothing to show the conditions or circumstances under which it was borrowed, and whether the loan was secured by collateral, or how the same was evidenced.

This case is distinguishable from *Northwestern Bank v. Van Roekel*, 202 Iowa 237, and *In re Taxation of Stacyville Bank*, 202 Iowa 221, because in both of those cases a part of the bills receivable of the bank had been used as a basis for the borrowed money.

The action of the district court was right.—*Affirmed.*

DE GRAFF, C. J., and EVANS, STEVENS, and VERMILION, JJ., concur.