## HANNAN, County Auditor, et al. v. FIRST NAT. BANK OF COUNCIL BLUFFS, IOWA.

(Circuit Court of Appeals, Eighth Circuit. December 6, 1920.)

No. 5537.

**1. Courts ⟪⟫328(2)—Taxation ⟪⟫611(4)—National bank may sue to contest validity of tax against shareholders and amount in controversy is amount of tax on all shares.**

A national bank required by the laws of the state to pay the tax assessed against its shareholders on their stock may maintain a suit to test the validity of the tax and the total amount of the tax on all its shares determines the amount in controversy for the purpose of federal court jurisdiction.

**2. Taxation ⟪⟫10—Tax on shares of national banks not invalidated by provision that assessor shall make valuation from bank's statement of its capital.**

Code Supp. Iowa 1913, § 1322, providing for the assessment of shares of national and state banks, savings banks, and loan and trust companies to the stockholders, *held* not invalid as to national banks as a taxation of their corporate property, because it provides that the assessor shall make his valuation of the shares from the bank's statement of its capital, surplus, and undivided profits.

**3. Taxation ⟪⟫12—Tax on national bank shares invalidated by omitting to similarly tax other moneyed capital.**

A systematic and intentional omission to tax a material portion of other moneyed capital in the state may render invalid a taxation of national bank shares, under Rev. St. § 5219 (Comp. St. § 9784), equally with a similar omission to tax by legislative enactment.

**4. Taxation ⟪⟫386(2)—Shareholder in national bank not entitled to deduction on account of government bonds owned by bank.**

The fact that a part or all of the capital of a national bank is invested in United States bonds, or securities which are exempt from taxation, does not entitle a shareholder to any deduction from an assessment on the full value of his shares.

**5. Taxation ⟪⟫12—Deduction of government securities by private bankers not discrimination against national banks.**

The fact that under a state statute individuals, such as private bankers, may deduct from the amount of their property for assessment purposes the amount of United States securities held by them is not a discrimination against the owners of national bank shares, forbidden by Rev. St. § 5219 (Comp. St. § 9784), which, in requiring other moneyed capital to be assessed at an equal rate, refers only to such moneyed capital as the state has power to tax.

**6. Taxation ⟪⟫433—Failure to physically attach oath does not invalidate assessment.**

Under Code Iowa 1897, § 1365, requiring the assessor to attach his oath to the assessment rolls, a failure to make such oath invalidates the assessment; but the essential requirement is that he should make the oath, and if it is taken, it is not necessary to the validity of the assessment that it

should be physically attached to the papers constituting the assessment roll, provided it is in some way reasonably connected therewith.

**7. Courts ☞366(1)—Decision of state court sustaining state statute binding on federal court.**

The decision of the highest court of a state, sustaining the validity of a state statute under its Constitution, is binding on the federal courts.

Appeal from the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Suit in equity by the First National Bank of Council Bluffs, Iowa, against J. D. Hannan, County Auditor, and others. Decree for complainant, and defendants appeal. Reversed.

C. E. Swanson, of Council Bluffs, Iowa (V. A. Morgan, of Council Bluffs, Iowa, on the brief), for appellants.

Addison G. Kistle, of Council Bluffs, Iowa (Tinley, Mitchell, Pryor, Ross & Mitchell, on the brief), for appellee.

Before SANBORN and CARLAND, Circuit Judges, and MUNGER, District Judge.

MUNGER, District Judge. This case presents an appeal from a decree enjoining the collection of taxes. The appellee, a national bank at Council Bluffs, Iowa, alleged that an attempted assessment for the years 1914 and 1915 had been made against its shareholders, based on the entire value of such shares, and without deducting from the value of the shares the amount of bonds of the United States which the bank owned. It further alleged that the tax was void, because no tax could be levied against the shares of stock in the state and savings banks, under the Iowa statutes. There was a denial of the allegations and a trial to the court.

[1] A preliminary question of the jurisdiction of the court arises, inasmuch as the tax assessed to any one shareholder does not amount to the sum of over $3,000. The statutes of Iowa in reference to taxation of banks and bank shares are in part as follows (Code Supp. Iowa 1907, and Code Supp. Iowa 1913, §§ 1321, 1322, 1325):

Section 1321: "*Private Bankers.* Private banks or bankers, or any persons other than corporations hereinafter specified, a part of whose business is the receiving of deposits subject to check, on certificates, receipts, or otherwise, or the selling of exchange, shall prepare and furnish to the assessor a sworn statement, showing the assets, aside from real estate, and liabilities of such bank or banker on January 1st of the current year, as follows:

"1. The amount of moneys, specifying separately the amount of moneys on hand or in transit, the funds in the hands of other banks, bankers, brokers or other persons or corporations, and the amount of checks or other cash items not included in either of the preceding items;

"2. The actual value of credits, consisting of bills receivable owned by them, and other credits due or to become due;

"3. The amount of all deposits made with them by others, and also the amount of bills payable;

"4. The actual value of bonds and stocks of every kind and shares of capital stock or joint stock of other corporations or companies held as an investment, or in any way representing assets, and the specific kinds and description thereof exempt from taxation;

"5. All other property pertaining to said business, including real estate, which shall be specially listed and valued by the usual description thereof;

"The aggregate actual value of moneys and credits, after deducting therefrom the amount of deposits, and the aggregate actual value of bonds and stocks, after deducting the portion thereof otherwise taxed in this state, and also the other property pertaining to the business, shall be assessed at twenty-five per cent. of the actual value of the same, not including real estate, which shall be listed and assessed as other real estate."

Section 1322: "Shares of stock of national banks and state and savings banks, and loan and trust companies, located in this state, shall be assessed to the individual stockholders at the place where the bank or loan and trust company is located. At the time the assessment is made the officers of national banks and state and savings banks and loan and trust companies shall furnish the assessor with lists of all the stockholders and the number of shares owned by each, and the assessor shall list to each stockholder under the head of corporation stock the total value of such shares. To aid the assessor in fixing the value of such shares, the said corporation shall furnish him a verified statement of all the matter provided in section thirteen hundred and twenty-one [1321], of the Supplement to the Code, 1907, which shall also show separately the amount of the capital stock and the surplus and undivided earnings, and the assessor from such statement shall fix the value of such stock based upon the capital, surplus, and undivided earnings. In arriving at the total value of the shares of stock of such corporations, the amount of their capital actually invested in real estate owned by them and in the shares of stock of corporations owning only the real estate (inclusive of leasehold interests, if any), on or in which the bank or trust company is located, shall be deducted from the real value of such shares, and such real estate shall be assessed as other real estate, and the property of such corporation shall not be otherwise assessed."

Section 1325: "*Corporation Liable.* The corporations described in the preceding sections shall be liable for the payment of the taxes assessed to the stockholders of such corporations, and such tax shall be payable by the corporation in the same manner and under the same penalties as in case of taxes due from an individual taxpayer, and may be collected in the same manner as other taxes, or by action in the name of the county. Such corporations may recover from each stockholder his proportion of the taxes so paid, and shall have a lien on his stock and unpaid dividends therefor. If the unpaid dividends are not sufficient to pay such tax, the corporation may enforce such lien on the stock by public sale of the same, to be made by the sheriff at the principal office of such corporation in this state, after giving the stockholders thirty days' notice of the amount of such tax and the time and place of sale, such notices to be by registered letter addressed to the stockholder at his post-office address, as the same appears upon the books of the company, or is known by its secretary."

It will be observed that by the last section quoted the bank is made liable for the payment of the taxes assessed to its stockholders under penalties, and that it may be collected as other taxes, or by action in the name of the county. The bank may recover such payments from the stockholders and is given a lien on the stock and unpaid dividends for the amount paid. The validity of statutes imposing such liability on national banks for the taxes levied against their shareholders is beyond question. National Bank v. Commonwealth, 9 Wall. 353, 362, 19 L. Ed. 701; Aberdeen Bank v. Chehalis County, 166 U. S. 440, 444, 17 Sup. Ct. 629, 41 L. Ed. 1069; Citizens' Nat. Bank v. Kentucky, 217 U. S. 443, 451, 30 Sup. Ct. 532, 54 L. Ed. 832. As a pecuniary liability is imposed on the bank for the payment of the total amount of the tax imposed on all its stockholders, it is the real party in interest in a suit to enjoin the collection from the assets, a collection which is in effect an enforced declaration of a dividend. Redhead v. Iowa Nat. Bank, 127 Iowa, 572, 103 N. W. 796.

269 F.—34

In the case of Cummings v. National Bank, 101 U. S. 153, 156 (25 L. Ed. 903), the same claim of the incapacity of the bank to sue because only the shareholders were interested was considered, and it was decided that the bank might maintain such a suit as this under a similar statute of Ohio, but less burdensome on the bank because it declared that the bank might pay the tax, whereas this statute declares that the bank must pay it. In that case the court said:

"But the Ohio statute, by the remedies it provides, places the bank in a condition where it must pay the tax, or encounter other evils of a character which create a right to avoid them by instituting legal proceedings to ascertain the extent of its responsibility before it does the acts demanded by the statute."

The bank, therefore, had the right to maintain the suit, and as the total amount due from it far exceeded the sum of $3,000, exclusive of interest and costs, the court had jurisdiction of the controversy.

[2] It was shown that appellee was the owner of a large amount of bonds of the United States at the time of the assessments and that no deduction was allowed from the value of the shares because of that fact. One of the principal questions that is presented goes beyond the relationship of these bonds to the asserted tax, as the appellee denies the authority of the state to levy any tax against the bank or the shares of stock therein. The statute of the United States which relates to the taxation of national banks is section 5219 of the Revised Statutes (section 9784, U. S. Comp. Stats. Ann.). It is contained in the chapter relating to the creation and regulation of these banks and is as follows:

"Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the Legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed."

It is contended by appellee that section 1322 of the Iowa statutes requires the taxation of the property of incorporated banks and not of the shares of stock therein. Undoubtedly national banks are governmental agencies of the United States and are not subject to taxation by the states on their general property (McCulloch v. Maryland, 4 Wheat. 316, 436, 4 L. Ed. 579; Farmers' & Mechanics' National Bank v. Dearing, 91 U. S. 29, 34, 23 L. Ed. 196; Bank of California v. Richardson, 248 U. S. 476, 483, 39 Sup. Ct. 165, 63 L. Ed. 372), and if this tax is levied on the bank's general property it is invalid.

The trial court filed an opinion in the case, accepting the appellee's construction of the Iowa statutes as imposing a tax on the value of the bank's property, but the decree did not cancel the entire tax for lack of power to tax any of the national bank's property, but reduced the amount of taxes levied for 1914, because United States bonds owned

by the bank had been included in the valuation for assessment. Does the Iowa statute tax the property of the bank? It said that it does because section 1322 of the Iowa statutes, heretofore quoted, is the same in effect as the former statute which it displaced (section 1322, Code Supplement of Iowa 1907), and which was declared in Home Savings Bank v. Des Moines, 205 U. S. 503, 27 Sup. Ct. 571, 51 L. Ed. 901, to tax the property of the state banks. The former section read as follows:

"Shares of stock of national banks shall be assessed to the individual stockholders at the place where the bank is located. Shares of stock of state and savings banks and loan and trust companies shall be assessed to such banks and loan and trust companies and not to the individual stockholders. At the time the assessment is made, the officers of national banks shall furnish the assessor with a list of all the stockholders and the number of shares owned by each, and he shall list to each stockholder under the head of corporation stock the total value of such shares. To aid the assessor in fixing the value of such shares, the corporations shall furnish him a verified statement of all the matters provided in the preceding section, which shall also show, separately, the amount of capital stock, and the surplus and undivided earnings, and the assessor, from such statement and other information he can obtain, including any statement furnished to and information obtained by the auditor of state, which shall be furnished him on request, shall fix the value of such stock, taking into account the capital, surplus and undivided earnings. In arriving at the total value of the shares of stock of such corporations, the amount of their capital actually invested in real estate owned by them * * * shall be assessed as other real estate, and the property of such corporations shall not be otherwise assessed."

In the Home Savings Bank Case the decision as to state banks was placed upon the grounds (1) that the statute specifically stated that the shares were to be assessed to the bank and not to the individual stockholders; (2) that while national banks were required to pay the taxes and were given a lien, by section 1324, on the stock and dividends as security for repayment of the taxes, the state banks were not required to make such payment, because their stockholders were not assessed; (3) that the assessor in making his valuation was directed to require a verified statement from the bank showing its assets but not the value of the good will and franchise; and (4) that the property of the corporation was not otherwise to be taxed. Considering these provisions of the statute the court held that it imposed a tax on the bank's property. The essential reason for that construction was that the statute plainly directed the assessment to be to the bank, and the two cases that were cited as controlling (Bank of Commerce v. New York City, 2 Black, 620, 628, 17 L. Ed. 451, and Bank Tax Case, 2 Wall. 200, 206, 209, 17 L. Ed. 793), were founded on similar statutes expressly directing the assessment of the corporate property. See Hager v. American Nat. Bank, 159 Fed. 396, 401, 86 C. C. A. 334; In re First Nat. Bank of Aurora, 103 Neb. 280, 171 N. W. 912.

The amendment of section 1322 was made after the decision in the Home Savings Bank Case and after the effect of that decision on the taxation of national bank shares had been called to the attention of the Iowa Legislature by a decision of the state Supreme Court. First Nat. Bank v. City Council of Estherville, 150 Iowa, 95, 129 N. W. 475. The amended section was intended to remedy the situation thus pointed

out. Security Sav. Bank v. Board of Review (Iowa) 178 N. W. 562. By apt words it repealed the former provision that the value of the shares of state banks were to be assessed to the banks, and not to the stockholders, and the provision that state banks were not to be taxed otherwise than on their shares. It also abolished the former rule that only national banks were required to pay the tax for the stockholders, and placed the same obligation on the state banks. In view of its history and purpose, the portions of the former statute omitted and the direct language employed in the amended section, the only interpretation that can be placed on the later statute is that it directs the assessment of the shares of stock to the individual stockholders in both state and national banks. It purports to tax the shares and it cannot be assumed unless the language used plainly requires it, that the Legislature intended to tax the property generally of national banks, which it could not do, and not to tax the shares of national banks, which was the only thing it could tax, apart from the real estate of the banks. It must be assumed that the Legislature was familiar with the United States statutes creating national banks and granting and limiting the power of the state in taxing them. It is the more to be assumed because the Legislature of the state has constantly recognized this limitation of the taxing power over national banks, and its statutes have directed the taxing of national bank shares and not the taxing the general property of such banks. Laws of Iowa, 1868, c. 153, p. 213; Code of Iowa 1873, § 818; Code Supplement of Iowa 1907, § 1322; Code Supplement Iowa 1913, § 1322.

The trial court based his conclusion that the corporate property was taxed upon the theory which he had expressed in the case of Iowa Loan & Trust Co. v. Fairweather (D. C.) 252 Fed. 605, 610, 611, that a tax which is based on a corporate bank's capital, surplus, and undivided profits as the measure of value of the capital stock, is necessarily a tax on the corporation's assets, as the shares are merely representation of partial ownership of such assets.

The fact that the assessor is bound to make his valuation of the shares from the bank's statement of its capital, surplus, and undivided profits (First Nat. Bank v. Hayes [Iowa] 171 N. W. 715), does not prove that he is thereby assessing the bank's property. In fixing any proper valuation of corporate shares, the amount of the actual capital, surplus, and undivided profits are essential elements. There may also be additional values in the good will and franchise (Home Savings Bank v. Des Moines, 205 U. S. 503, 512, 27 Sup. Ct. 571, 51 L. Ed. 901), but such values are so indefinite and so much a matter of opinion that the Legislature could properly direct the assessors, usually unskilled in the ascertainment of such values, to omit them as elements of assessable value. In Stanley v. Supervisors of Albany, 121 U. S. 535, 548, 549, 7 Sup. Ct. 1234, 1238 (30 L. Ed. 1000), a valuation by the assessor of the shares of the Bank of Albany at par, thus ignoring the value of the surplus, undivided profits, good will, and franchise, and although the real value of the shares exceeded the par value by from 10 to 70 per cent., was treated as an assessment of the shares, and not of the bank's property. The method was applied to all the banks, as the

Iowa statute attempts to apply the same method to both state and national banks, and of this the court said:

"A different method might have led to perplexing difficulties, owing to the great fluctuations to which shares in banking institutions are subject; their value depending very much on the skill and wisdom of the managers of those institutions. Intelligent men constantly differ in their estimate of the value of such property, and the stock market shows almost daily changes. Presumptively, the nominal value is the true value; any increase from profits going, in the natural course of things, in dividends to the stockholders. This method, applied to all banks, national and state, comes as near as practicable, considering the nature of the property, to securing, as between them, uniformity and equality of taxation; it cannot be considered as discriminating against either. Both are placed on the same footing. * * * The method pursued could in no respect be considered as adopted in hostility to the national banks. It must sometimes place the estimated value of their shares below their real value; but such a result is not one of which the holders of national bank shares can complain. It must sometimes lead also to overvaluation of the shares; but, if so, no ground is thereby furnished for the recovery of the taxes collected thereon."

It is undoubtedly true that, in practical effect, a taxation of shares of stock results in much the same financial loss to the individual owners as if the corporation had been taxed on its property, but in legal contemplation the shares and the corporate capital are separate things. It was said in Owensboro National Bank v. Owensboro, 173 U. S. 664, 680, 681, 19 Sup. Ct. 537, 542 (43 L. Ed. 850), with a full review of the cases, in which that court had so held:

"It cannot be doubted that, as a general principle, it is settled that the taxation of the property, franchises, and rights of a corporation is one thing, and the taxation of the shares of stock in the names of the shareholders is another and different one. This doctrine has been applied to sanction the taxation of the one, where the other was covered by a contract of exemption."

And in reply to a claim that there was an identity of result, if the capital or if the shares were taxed, it was further said:

"If the postulate [of cases cited] upon which they necessarily rest be overthrown by saying that there is an equivalency between the taxation of the property of the bank and the shares of stock in the names of the stockholders, it would follow that the principles upheld by the cases would disappear with the destruction of the reasons upon which they were placed. It would then necessarily follow that the grant by Congress of authority to tax the shares of stock in the names of the shareholders could not be exercised where the bank held bonds of the United States exempt from taxation; that, the two things being the same, the shareholders would be entitled to deduct the property of the bank from the sum of the taxation of the shares; in other words, that the right to tax the shareholders would be a vain thing." Van Allen v. Assessors, 3 Wall. 573, 583, 18 L. Ed. 229.

The conclusion which we have reached, that the amended Iowa statute taxes only the shares of state and national banks, is also the construction placed upon the statutes by the Supreme Court of Iowa. Head v. Board of Review, 170 Iowa, 300, 152 N. W. 600; First Nat. Bank v. City of Council Bluffs, 182 Iowa, 107, 161 N. W. 706.

Notwithstanding these decisions, appellee contends that section 1322 cannot be construed to impose a tax upon the shares in a state bank for another reason and that therefore national bank shares may not be assessed, because it would tax them at a higher rate than moneyed

capital invested in state bank shares, and that this would be forbidden by section 5219, Rev. Stats. (Comp. St. § 9784). The reason assigned is that, if it is held that state bank shares are taxed, the closing sentence of section 1322, providing that the property of the banks shall not be otherwise assessed, violates section 2 of article 8 of the Iowa Constitution, whereby the property of all corporations for pecuniary profit must be subject to taxation the same as individuals. But if this be the true application of the Constitution to this statute, the portion providing for the taxation of the shares is not invalid, but only the portion exempting the property of the state banks from taxation. It is said that a construction should be favored by which the shares are not held to be taxable, in order that the clause exempting the bank's property may be upheld, and also that, if the latter clause must be declared invalid, the whole section should fail, as the exemption clause was the inducement to its passage. It is not clear that such an interpretation should be given, or that the Legislature would not have passed this section, even if it had realized that its exemption of the bank's property was ineffectual. It has the power to tax both the shares of stock in, and the property of, the same corporation (Cook v. City of Burlington, 59 Iowa, 251, 13 N. W. 113, 44 Am. Rep. 679; Hawkeye Ins. Co. v. French, 109 Iowa, 585, 80 N. W. 660), and such taxation is not double taxation (Owensboro National Bank v. Owensboro, 173 U. S. 664, 681, 19 Sup. Ct. 537, 43 L. Ed. 850). The problem before the Legislature was this: The statute taxing state banks on their property had been held not to be a tax on their shareholders by the decision in the Home Savings Bank Case; thereupon the Supreme Court of Iowa had held that any taxation of national bank shares was invalid, because of this construction of the state statute. First Nat. Bank v. City Council of Estherville, 150 Iowa, 95, 129 N. W. 475. The very large amount of taxable property represented by the national banks was thus released from taxation. The only method by which it could be subjected to taxation was to tax its shareholders on their shares, but in that event it was necessary to impose a like tax on state bank shares, representing similar moneyed capital. It cannot be said that the Legislature would rather have exempted national bank shares from taxation than to have imposed a tax on state bank shares and to have left state banks' corporate property subject to taxation also, if the Constitution required it. It is also apparent that there is no discrimination, within the meaning of section 5219, Rev. Stats., in the mode of taxing national and state bank shares. Head v. Board of Review, 170 Iowa, 300, 152 N. W. 600; Security Sav. Bank v. Board of Review (Iowa) 178 N. W. 562.

[3] The appellee claims that the decree enjoining the collection of taxes levied against its shareholders should be sustained, even if the Iowa statute be held valid, because in the administration of the law, the four other banks in the city where it was located, two of them being national banks, and two being state banks, were not assessed or taxed for the years 1914 and 1915. A systematic and intentional omission to tax a material portion of other moneyed capital of the kind designated in section 5219 Rev. Stats., may be a violation of that section equally with a similar omission to tax by legislative enactment.

Pelton v. National Bank, 101 U. S. 143, 146, 25 L. Ed. 901; Cummings v. National Bank, 101 U. S. 153, 157, 25 L. Ed. 903.

Plaintiff below offered no direct proof of a failure to assess or to tax the shareholders of these other banks. There was no endeavor to prove that they were not so assessed and taxed for 1915. The claim of a failure to make an assessment in 1914 is based on evidence of the deputy county auditor that he did not find in that office the assessment roll sheets showing an assessment of the bank shares. But he further testified that the assessment sheets for that year were bound together by him in a loose leaf volume and that any such sheet could readily be torn out. The volume was before the trial court, but is not in the record on appeal. He also testified that the volume was kept for two months in the county treasurer's office, and no one from that office was called to testify to any search. There was an assessment spread upon the books of the assessor against these shares. There is a presumption that the taxing officers duly assessed all who were subject to taxation, and this evidence was not sufficient to overthrow it, and the court properly found that an assessment and levy had been made.

[4, 5] It is further maintained that section 1322 of the Iowa statutes as amended must be struck down as authority for taxation of national bank shares, because private bankers in Iowa are not assessed upon an equivalent basis, for the reason that private bankers are allowed to deduct the amount of United States securities owned by them from the amount of their assessable property, while national bank shares are assessable at their full value, although a part or all of the capital of the bank may be invested in such securities of the United States. This is asserted to be a violation of section 5219 of the Revised Statutes in that it discriminates between the two classes of moneyed capital. Shares in a national bank are subject to taxation by the states, in accordance with the grant of power conferred by section 5219, Rev. Stats., and the fact that a part or all of the capital of the national bank is invested in United States bonds or securities, which are exempt from taxation, does not entitle the shareholder to any deduction from an assessment upon the full value of his shares. Van Allen v. Assessors, 3 Wall. 573, 583, 588, 18 L. Ed. 229; National Bank v. Commonwealth, 9 Wall. 353, 359, 19 L. Ed. 701; Tennessee v. Whitworth, 117 U. S. 129, 136, 6 Sup. Ct. 645, 29 L. Ed. 830; Mercantile Bank v. New York, 121 U. S. 138, 148, 7 Sup. Ct. 826, 30 L. Ed. 895; Aberdeen Bank v. Chehalis County, 166 U. S. 440, 449, 17 Sup. Ct. 629, 41 L. Ed. 1069; Home Savings Bank v. Des Moines, 205 U. S. 503, 516, 27 Sup. Ct. 571, 51 L. Ed. 901; 37 Cyc. 838. The fact that individuals, such as private bankers, may deduct from the amount of their assessable property the amount of United States securities held by them, is not a discrimination forbidden by section 5219, as against the owners of national bank shares, assessed at their full value, because section 5219, in requiring other moneyed capital to be assessed at an equal rate, only refers to such moneyed capital as the state has the power to tax, and not to that property which the national power has exempted from taxation. People v. The Commissioners, 4 Wall. 244, 256, 18 L. Ed. 344; Exchange Nat. Bank v. Miller (C. C.) 19

Fed. 372, 380; Head v. Board of Review, 170 Iowa, 300, 152 N. W. 600.

[6] Appellee insists that it was the duty of the assessor to attach his oath to the assessment rolls, and that there was a failure to do so, and that these omissions rendered the assessment void. As the decree sustained the tax of 1914 (although reducing it in amount), and no cross-appeal was taken by appellee, the question is not now open as to that assessment. It may be considered in relation to the tax of 1915, as the court canceled the assessment and enjoined the collection of any tax for that year, because that portion of the decree of the court should be sustained, if the assessment and levy were void for this reason, even if the court assigned another reason for entering the decree. Section 1365 of the Iowa Code of 1897 requires the assessor to attach to the assessment rolls his oath that the values of the property listed are truly set forth in his opinion and that he has not omitted to demand a list from any person having taxable property. A failure of the assessor to make his oath invalidates the assessment. Warfield-Pratt-Howell Co. v. Averill Grocery Co., 119 Iowa, 75, 93 N. W. 80; Woodbine Sav. Bank v. Tyler, 181 Iowa, 1389, 162 N. W. 590. But in the first of these cases it is said that mere informalities not involving a departure from the statutory requirements will not defeat the tax, and in support of this is cited the case of Twinting v. Finlay, 55 Neb. 152, 75 N. W. 548, with the comment:

"In this last case the evidence showed the oath not to be attached to the assessment roll, and this was held a mere irregularity, as it was presumed, in fact, to have been taken."

We think this was intended to be and is the construction that should be given to this statute and that it is not necessary that the oath be physically attached to the papers constituting the assessment roll, provided the oath is taken and is in some way reasonably connected with the assessment roll. The essential requirements were that the assessor should make the oath and return it with the assessment roll, so that it may be known whether he has complied with the statutes or otherwise. The evidence shows that the assessment lists for 1915 were placed in the county auditor's office, where they were kept in a cabinet case containing a number of drawers. The assessment lists were alphabetically arranged, and a separate cover was placed over those embraced under each letter, and then they were placed in the drawers of this cabinet. The oath of the assessor was pasted on the inside of each drawer. The assessor also returned his book, containing a statement of these assessments, and his oath was attached to this book. We think this was a sufficient attachment of the oath to the rolls to comply with the statute.

There is also a claim, not strongly urged, that the assessor did not include the shares of stock in the assessment of the personal property of the owners thereof, as required by section 5219 of the Revised Statutes of the United States and by the laws of Iowa. This contention, also, can only be considered with reference to the tax of 1915, because of the failure of appellee to take a cross-appeal. It was stipulated that a separate tax list was made out in the name of each stockholder in

appellee's bank, and it is shown that a separate valuation was made for each of such stockholders. This was a compliance with the United States statutes permitting, and with the state statutes requiring, the assessment to be made against the shareholders.

[7] There is a further contention that section 1322 was not in fact amended by the act of 1911 purporting to amend it, because it was not passed by a two-thirds vote of each branch of the legislative assembly and that section 12 of article 8 of the Constitution of Iowa required such a vote. The section of the Constitution is as follows:

"Subject to the provision of this article, the General Assembly shall have power to amend or repeal all laws for the organization or creation of corporations, or granting of special or exclusive privileges or immunities, by a vote of two-thirds of each branch of the General Assembly; and no exclusive privileges, except as in this article provided, shall ever be granted."

The same question was presented to the Supreme Court of Iowa, and that court decided (First National Bank v. City of Council Bluffs, 182 Iowa, 107, 161 N. W. 706) that the act violated no provision of that section of the Constitution, and that decision is controlling.

The decree will be reversed, with directions to enter a decree dismissing plaintiff's bill.