Des Moines National Bank, Appellee, v. Thomas Fairweather et al., Appellants.

**TAXATION:** Shares of Stock of National Bank. Principle reaffirmed 1 that the state has power, under Sec. 5219 of the Federal statutes, to assess the *shares of stock* of a national bank, regardless of the tax-exempt character of the assets of the bank.

**STATUTES:** Subjects and Title of Act—Insufficient Title. A legisla- 2 tive title which declares a purpose to amend a named section of law, and correctly designates the subject-matter of said section, will not support an enactment on a subject-matter which is distinctly dif-

ferent from that covered by said section. In other words, the legislature may not, under the guise of amending a specified section dealing with one subject-matter, radically amend another section dealing with a distinctly different subject-matter. So held where the title was, ''to amend Section 1304, Suppl. Supp., 1915, relating to property exempt from taxation,'' while the act provided a *method of fixing the assessed valuation of corporate bank stock,*—a subject-matter fully covered by Sec. 1322, Code Supp., 1913.

**TAXATION:   Shares of Bank Stock—Deducting Securities ''Exempt From Taxation.''** While a national bank and a *private* banker are required to furnish to the assessor the *same* items of information relative to their affairs, among which is the item of securities *''exempt from taxation''* (Secs. 1321, 1322, Code Supp., 1913), yet the assessor, in fixing the value of the *shares of stock* of national banks is not permitted to give any consideration to the item of securities ''exempt from taxation,'' for the very good reason that, in fixing the value of such shares of stock, he is commanded to confine his computation of values to (1) capital, (2) surplus, and (3) undivided profits. (Sec. 1322, Code Supp., 1913.)

**TAXATION:   Nondiscrimination Against Shares of Stock.** No discrimination in taxation is revealed by Sec. 1321, Code. Supp., 1913, which superfluously concedes that tax-exempt government securities owned by a private banker may not be taxed, and by Sec. 1322, Code Supp., 1913, which provides that, in assessing shares of stock of a corporate bank, no deductions shall be allowed on account of tax-exempt government securities which are owned by the *bank,* even though such securities do enhance the value of the shares of stock.

**TAXATION:   Corporate Assets and Shares of Stock as Distinct Entities.** Tax-exempt government securities owned by a national bank and the shares of stock of the bank owned by a shareholder are separate and distinct classes of property. It follows that, inasmuch as the stockholder is not, in a legal sense, the owner of the exempt securities, he may not, in the assessment of his shares, have a deduction on account of such securities.

*Appeal from Polk District Court.*—THOMAS J. GUTHRIE, Judge.

FEBRUARY 12, 1921.

SUPPLEMENTAL OPINION ON REHEARING SEPTEMBER 28, 1921.

IN THE district court, this was an appeal from the action of the city council of Des Moines, acting as the board of review, in

the matter of an assessment of the shares of stock of the plaintiff bank. The appeal was presented to the district court in the form of a petition filed by the plaintiff, to which petition the defendants demurred. The district court overruled the demurrer. The defendants, electing to stand thereon, have appealed to this court.—*Reversed.*

*H. W. Byers, Reson S. Jones, C. A. Weaver,* and *Paul Hewitt,* for appellants.

*Sargent, Gamble & Read,* for appellee.

EVANS, C. J.—Pursuant to Section 1322, Code Supplement, 1913, the bank furnished to the assessor the statement required by such section for the purpose of enabling the assessor to fix the assessed value of the bank shares of stock, and to assess the same against the respective stockholders. From this statement it appeared that the capital stock, the surplus, and the undivided earnings amounted to an aggregate of $905,849. This aggregate included real estate to the value of $156,000, and another item of $62,000, both of which items were deducted by the board of review from the larger aggregate, leaving a net valuation, for the purpose of assessment of the shares of stock, of $687,799.

It appeared also from such statement that the plaintiff held as an investment certain tax-exempt securities of the United States government, amounting to $1,442,486. The plaintiff demanded that the valuation of its shares for the purpose of assessment should be diminished by the amount of such tax-exempt securities. This contention was denied by the board of review and allowed by the ruling of the district court. The effect of such allowance was to absorb the entire value of the plaintiff's shares of stock for the purpose of taxation, and to leave no assessable value therein. Such result is sufficiently startling to challenge both judicial and legislative attention.

In its petition in the district court, the plaintiff set forth the following seven grounds of attack upon the assessment:

"1. Because said assessment subjected to taxation said securities of the United State government.

"2. Because said assessment subjected to taxation said securities of the United States government, contrary to the pro-

visions of the Constitution of the United States and the statutes in such cases made and provided.

"3.   Because said assessment subjected to taxation shares of stock in a national banking corporation, organized as aforesaid, at a greater rate than money capital in the hands of individual citizens of a state.

"4.   Because said assessment was not made in accordance with the provisions of Sections 1321 and 1322 of the Supplement to the Code of Iowa, for the reason that by said Section 1322 the assessor is required to fix the value of the shares of stock of corporations based upon the capital, surplus, and undivided earnings disclosed by the statement therein required to be furnished by the corporation, and required to contain the same information set forth in Section 1321 of the Supplement to the Code of Iowa; whereas, by the fourth subdivision of Section 1321, the specific kinds and descriptions of bonds exempt from taxation is required to be stated, and that, in and by the proceedings leading to said assessment, such bonds have not been exempted from taxation, but have been considered in fixing the amount of said assessment.

"5.   Because in truth and in fact, by the method pursued, the assessment is of the tangible assets of the appellee, and includes said securities issued by the United States government.

"6.   Because said assessment is contrary to the provisions of Section 5219 of the Revised Statutes of the United States, for that the shares of stock in national banking associations are immune from taxation by state or local taxing authority, except upon the express consent of the congress of the United States, and such consent, if any, is evidence by the provisions of said Section 5219 of the Revised Statutes; whereas said section, for the purpose of preserving the state power of taxation, is construed by the Supreme Court of the United States to consider the subject from the point of view of ultimate beneficial interest, —that is, said section treats the stock interest, the stockholder, and the bank as one, and subject to one taxation, by the methods which it provides.

"7.   That said assessment is not made in accordance with the provisions of Chapter 257, Acts of the 38th General Assembly, known as Senate File 479."

'Defendants' demurrer was based upon two general grounds:

(1)   That it appeared upon the face of the petition that the plaintiff was not entitled to any relief.

(2)   That Chapter 257 of the Acts of the Thirty-eighth General Assembly is unconstitutional and void.

These stated grounds of the petition and demurrer concisely present the scope of the whole controversy.

The demurrer was overruled generally, so that the plaintiff stands here upon all the grounds of its petition, any one of which, if valid, is sufficient to sustain the ruling below. As to the first six grounds of plaintiff's petition, they go to the power of taxation conferred upon the state by Section 5219 of the Revised Statutes of the United States. The seventh ground goes to the construction and validity of the statutes of this state, Chapter 257, Acts of the Thirty-eighth General Assembly.

I.   As to the first six grounds of complaint made by plaintiff against the assessment, these all involve the question of the power of the state, under the permission of Section 5219 of the Revised Statutes of the United States, to assess against the shareholders of a national bank the value of the shares of stock therein in accord with the provisions of our Section 1322, and regardless of the tax-exempt character of the assets of the bank. We have ourselves held in the affirmative on this question. *Head v. Board of Review,* 170 Iowa 300; *First Nat. Bank v. City of Council Bluffs,* 182 Iowa 107. Such also is the holding of the Federal courts, whose precedents are obligatory upon us upon this question. See *Hannan v. First Nat. Bank,* 269 Fed. 527. The cited case was decided very recently by the Federal circuit court of appeals for this circuit. It reviews the previous cases with great care, and holds squarely that there is no conflict between Section 5219 of the Revised Statutes of the United States and Section 1322 of the Code of Iowa.

1. TAXATION: shares of stock of national bank.

In view of this pronouncement, it is quite needless that we enter into argument on this feature of the case. Following the Federal holding in the *Hannan* case, we must hold that the first six grounds of complaint set forth in plaintiff's petition must each and all be overruled.

II.   It remains to consider the seventh ground of the peti-

tion and the demurrer thereto.  Chapter 257 of the Acts of the Thirty-eighth General Assembly· is a purported amendment to Section 1304 of the Supplemental Supplement of 1915.  Such act, with the title thereto, is in full as follows:·

2. STATUTES: subjects and title of act: insufficient title.

"An Act to amend Section one thousand three hundred four (1304) Supplemental Supplement to the Code, 1915, relating to property exempt from taxation.

"Be it Enacted by the General Assembly of the State of Iowa:

"Section 1.   That Section one thousand three hundred four (1304), Supplemental Supplement to the Code, 1915, be and the same is hereby amended by adding after the semicolon in line sixteen thereof, the following: 'provided, however, that in determining the assessed value of bank stock, the amount of obligations issued by the United States government since the declaration of war against Germany, actually owned by a bank or trust company shall be deducted, and any bank or trust company which since January first, ninteen nineteen, has been assessed on its shares of stock without so deducting such United States government securities shall be entitled to have its assessment on its shares reduced by the board of supervisors of the county in which such bank is located, so as to deduct from its total valuation such government securities.  Provided, however, that no deduction shall be made unless the bank or trust company claiming the same shall have been the owner in good faith and not for the sole purpose of securing such deduction, of said securities for a period of more· than sixty (60) days prior to December thirty-first of the year preceding that for which the assessment is made.'

"Sec. 2.   This act being of immediate importance shall become effective upon the publication thereof in· the Des Moines Register and the Des Moines Capital, newspapers published in Des Moines, Iowa.

"Approved April 18, A. D. 1919."

We find great difficulty in applying this statute to its purported subject-matter.  It purports to be a proviso amendment to the first sixteen lines of Section 1304, Supplemental Supplement, 1915.  The first sixteen lines of such section constitute Subsection 1 thereof, which is as follows:

"The following classes of property are not to be taxed:

"1. The property of the United States and this state, including university, agricultural college and school lands; the property of a county, township, city, town or school district or militia company, when devoted entirely to public use and not held for pecuniary profit; municipal, school, and drainage bonds or certificates hereafter issued by any municipality, school district, drainage district or county within the state of Iowa; public grounds, including all places for the burial of the dead, crematoriums, the land on which they are built and appurtenant thereto not exceeding one acre, so long as no dividends or profits are derived therefrom; fire engines and all implements for extinguishing fires, with the grounds used exclusively for their buildings and meetings of the fire companies; no deduction from the assessment of the stock of any bank or trust company shall be permitted because of such bank or trust company holding such bonds and certificates as may be exempted above:"

When there is attached to the foregoing subsection the amendment set forth in Chapter 257 of the Acts of the Thirty-eighth General Assembly, the incongruity between the two parts as to subject-matter is readily apparent. Section 1303, Code Supplemental Supplement, 1915, relates to the duties of the board of supervisors in the levy of millage taxes upon assessed property. Section 1304 purports to be an enumeration of the classes of property that "are not to be taxed." That is the subject-matter thereof. We do not overlook the last sentence of Subsection 1, and we may say in passing that this adds nothing to the subject-matter of this section and takes nothing away therefrom. It is simply declaratory of the law as it was and is and would be if the sentence were wholly omitted. Chapter 257, under consideration, has no reference to the subject-matter of said section. It enumerates no exempt property; it declares no exemption; it withdraws no exemption. Its real subject-matter is the method of fixing the assessed valuation of corporate stock in banks and trust companies. Such bank stock is not exempt from taxation. The amendment does not purport to make it exempt from taxation, even though such be the practical effect of it. The purport of such amendment is to fix a method or guide or rule for ascertaining the assessable value of such cor-

porate stock.   If it be given effect, such effect will necessarily
be, not to amend Section 1304 in relation to any part of its
subject-matter, but to amend radically, if not destructively, Sec-
tion 1322.   This Section 1322 furnishes the one complete statu-
tory scheme for arriving at the assessed value of all bank stock,
including state, savings, and national banks.   For the purpose
of such assessed valuation, it lays upon the assessor the minis-
terial duty to compute such assessed valuation upon the basis
of the items specified in the statute.   These items are to be
furnished under oath by the corporate officers.   They do not in-
clude any reduction for exempt assets.   Pursuant to such section,
exempt assets are not deemed to reduce the value of the stock
shares.   Under this section, we have held its provisions to be
mandatory upon the assessor, and that, in obeying its mandate,
the act of the assessor is to be purely ministerial.   *First Nat.
Bank v. Hayes*, 186 Iowa 892.   We have put the same construc-
tion upon this section of the statute since the enactment of Chap-
ter 257, under consideration.   *Security Sav. Bank v. Board of
Review*, 189 Iowa 463.   If Chapter 257 be deemed effective ac-
cording to its terms, then its effect is to so amend and qualify
Section 1322 as to destroy its mandatory character, and likewise
the ministerial character of the duty of the assessor, and to con-
fer upon the assessor the power of discretion and judgment in
the assessment of bank stock, contrary to the provisions of said
Section 1322.   This is not a mere incidental effect of the amend-
ment; it is its only effect.   It has no effect whatever as to Section
1304, except as an addition to its subject-matter.   It neither re-
peals nor contradicts any provision of Section 1304; it qualifies
no provision thereof; it confirms no provision thereof.   Section
1304, so far as its own subject-matter is concerned, speaks pre-
cisely the same as it did before, and as it will speak if this
amendment be stricken down.

Under the Constitution (Section 29, Article 3), if the sub-
ject-matter of an act be not expressed in the title, the act is void
as to such subject.   When it is considered that a legislative body
has thrust upon its consideration during a brief session hundreds
of proposed bills, and that the labor cast upon a member, in
order to enable an intelligent understanding of proposed acts,
is a stupendous one, and is necessarily performed with some

degree of imperfection, we can readily see how important this constitutional requirement is to intelligent legislation. If the title of a bill fairly discloses the general nature and objective of a proposed act, the attention of the legislator is thereby challenged. Public attention is also challenged thereby. If the title withholds such disclosure, or by indirection conceals it, such a course can operate only in aid of stealthy legislation.

As to the title of this act, it contained nothing which fairly tended to challenge the attention of a legislator or the public to its nature or scope, or to the stupendous consequences of its operation. It is almost incredible that the consequences appearing in this case could have been contemplated by the legislature. When it is considered that there are in existence United States securities to the amount of more than two thousand millions of dollars, and that these may be bought in the market any day by any bank and may be sold again upon the same market, either early or late, the possibilities are astounding. The manifest practical effect of the act would be to reduce the assessable value of all bank stock to a point below zero, and to protect all bank stock from any taxation whatever. This is accomplished, not by a frank statutory declaration that bank stock shall be exempt from taxation, but by an artificial method of computing its assessable value, which method is contradictory to Section 1322, and not amendatory of Section 1304.

We reach the conclusion, therefore, that the title to the act under consideration would not justify our applying it as an amendment to Section 1322; that, if it cannot be so applied, it can have no effect whatever upon any issue in this case, this being an appeal from the board of review. The assessment under consideration was made in strict accord with Section 1322. Whether the amendatory act can be deemed to have any validity for any purpose, we have no occasion to determine. It is enough to say now that it must be deemed to be without validity as an amendment to Section 1322. The plaintiff cannot, therefore, stand upon it in an appeal from the board of review.

It follows that the defendants' demurrer should have been sustained as to all grounds of the petition on appeal. The order entered below is, accordingly, reversed.—*Reversed.*

WEAVER, PRESTON, STEVENS, ARTHUR, FAVILLE, and DE GRAFF, JJ., concur.

## SUPPLEMENTAL OPINION.

EVANS, C. J.—I.  Original opinion was filed herein on February 12, 1921.  Certain points are made in the petition for rehearing which merit further discussion.  In our original opinion, we disposed of plaintiff's first six grounds of complaint on the theory that each and all presented Federal questions, and were disposed of by Federal authority.  This assumption on our part was too broad, in that Ground 4 of the complaint did challenge the validity of the assessment made by the board of review as being in violation of our own statute, Section 1322.  All the grounds of complaint are specifically set out in the original opinion, and we will not repeat them here.  The challenge of Ground 4, now under consideration, was and is that, by the express provisions of Section 1322 of our Code Supplement, the assessor was required to deduct from the assets all securities exempt from taxation, in order to arrive at a basis of valuation of the shares of stock.  The point is now pressed in the petition for rehearing.  The point thus made involves a consideration of both Sections 1321 and 1322, which are as follows:

3. TAXATION: shares of bank stock: deducting securities "exempt from taxation."

"Sec. 1321.  Private banks or bankers, or any persons other than corporation hereinafter specified, a part of whose business is the receiving of deposits subject to check, on certificates, receipts, or otherwise, or the selling of exchange, shall prepare and furnish to the assessor a sworn statement, showing the assets, aside from real estate, and liabilities of such bank or banker on January first of the current year, as follows:

"1.  The amount of moneys, specifying separately the amount of moneys on hand or in transit, the funds in the hands of other banks, bankers, brokers or other persons or corporations, and the amount of checks or other cash items not included in either of the preceding items;

"2.  The actual value of credits, consisting of bills receivable owned by them, and other credits due or to become due;

"3.   The amount of all deposits made with them by others, and also the amount of bills payable;

"4.   The actual value of bonds and stocks of every kind and shares of capital stock or joint stock of other corporations or companies held as an investment, or in any way representing assets, and the *specific kinds and description thereof exempt from taxation;*

"5.   All other property pertaining to said business, including real estate, which shall be specially listed and valued by the usual description thereof; the aggregate actual value of moneys and credits, after deducting therefrom the amount of deposits, and the aggregate actual value of bonds and stocks, after deducting the portion thereof otherwise taxed in this state, and also the other property pertaining to the business, shall be assessed as provided by Section thirteen hundred and five of this chapter, not including real estate, which shall be listed and assessed as other real estate.

"Sec. 1322.   Shares of stock of national banks and state and savings banks, and loan and trust companies, located in this state, shall be assessed to the individual stockholders at the place where the bank or loan and trust company is located.   At the time the assessment is made the officers of national banks and state and savings banks and loan and trust companies shall furnish the assessor with lists of all the stockholders and the number of shares owned by each, and the assessor shall list to each stockholder under the head of corporation stock the total value of such shares.   To aid the assessor in fixing the value of such shares, the said corporation shall furnish him a verified statement of all the matter provided in Section thirteen hundred twenty-one of the Supplement to the Code, 1907, which shall also show separately the amount of the capital stock and the surplus and undivided earnings, and the assessor from such statement *shall fix the value of such stock based upon the capital, surplus, and undivided earnings.*   In arriving at the total value of the shares of stock of such corporations, the amount of their capital actually invested in real estate owned by them and in the shares of stock of corporations owning only the real estate (inclusive of leasehold interests, if any) on or in which the bank or trust company is located, shall be deducted from the real

value of such shares, and such real estate shall be assessed as other real estate, and the property of such corporation shall not be otherwise assessed. A refusal to furnish the assessor with the list of stockholders and the information required under this section shall be deemed a misdemeanor and any bank or officer thereof so refusing shall be punished by a fine not exceeding five hundred dollars.''

It will be noted that by the provisions of Section 1321 the private banker is required to aid the assessor by furnishing to him certain enumerated data as a description of his assets, including specific description of such assets as are ''exempt from taxation.''

Section 1322, by its reference to Section 1321, in effect calls for the same data. The argument now is that the same data which fixes the assessable value of the assets of a private banker must also fix the assessable value of the shares of stock of an incorporated bank. Manifestly, United States securities are exempt from state taxation. To assess them for taxation in the hands of the owner, whether private banker or other person, would be an interference with Federal prerogative. Clearly, therefore, a private banker, as owner of United States securities, could, under Federal law, insist upon their exemption from taxation. Does it follow that, under Section 1322, they must be eliminated from consideration of the assessor, in fixing upon the assessable value *of the shares of stock* held by the shareholders? Section 1322 answers this question in the negative, in that it expressly directs the assessor to ''fix the value of such stock'' by basing such valuation ''upon the capital, surplus, and undivided earnings.'' Such was the course pursued by the assessor in this case. Whereas another provision of this section provides for the elimination of real estate from such basis of valuation, there is no provision in such section for eliminating ''exempt'' assets from such basis. We are not considering at this point whether any discrimination is presented in the operation of these two sections. If yea, a Federal question would be presented, which we consider in the next division hereof. We hold here only that Section 1322 is mandatory upon the assessor, as presenting a specific enumeration as a basis for the valuation of stock for the purpose of taxation, and that such enumeration

does not permit the elimination of "exempt assets" for the purpose of such valuation. It follows that the valuation fixed by the assessor was not in violation of our own statute.

II. Turning now to the Federal question, the point is made by petitioner that, under Section 1321, a private banker could claim exemption of his United States securities from taxation, and that the assessed valuation of his assets would accordingly be reduced proportionately, whereas no such exemption is available to a shareholder of bank stock, for the purpose of fixing the taxation value of his shares; that, therefore, our statutes work a discrimination in favor of the private banker, as against the shareholder of national bank stock, in violation of Section 5219 of the Revised Statutes of the United States. Our one concern in this field of discussion is to follow Federal authority, and we might well rest our holding upon the recent case of *Hannan v. First Nat. Bank,* 269 Fed. 527, wherein the question now raised is fully considered by the United States Circuit Court of Appeals for this circuit.

4. TAXATION: non-discrimination against shares of stock.

Section 1321 *creates* no exemption. It merely recognizes such exemption as shall have been created by higher authority. On that question, it is not legislative, in an affirmative sense. It simply renders obedience to Federal sovereignty. The private banker claims his exemption, if at all, *under the Federal statute, and not under our statute.* If Section 1321 should purport to accomplish uniformity by *denying* exemption to the private banker, it would be a vain effort. The exemption would still remain. It cannot be said, therefore, that any discrimination is created by the two sections of our statute.

But it is contended, nevertheless, that the practical operation of the law works a discrimination which entitles the plaintiff to the protection of Section 5219, United States Revised States. This contention rests upon the argument that the taxation of shares of stock to the shareholders is the practical equivalent of the taxation of corporate assets to the corporation; that two formal methods of taxation are possible; and that the doing of one is only an indirect method of doing the other. Whichever method of taxation be adopted, the burden of the

5. TAXATION: corporate assets and shares of stock as distinct entities.

tax must ultimately fall upon the shareholders. It is to be conceded that the two methods are ordinarily equivalent in practical ultimate result. It is to be conceded also that, if a direct tax were levied against the corporation itself upon its assets, it could not be levied upon securities exempt under Federal statute. Does it follow that taxation may not be levied against the shareholder upon his *shares of stock* upon the basis of market value, regardless of the character of the assets which give such market value? A corporation is, at most, but an artificial entity. Under sanction of law, it may be created or dissolved by the voluntary action of its shareholders. It can have no assets except such as are permitted by its shareholders. It is theirs to give or to take away. The value of the corporate assets and the value of the shares of stock are necessarily responsive. One flows into the other. They are not necessarily equal, either in a legal or in a practical sense. Ordinarily, however, they are, in a practical sense, *approximately* equal. The fact remains that the legal title to the assets is in the corporation. The property of the shareholders is in the stock. Under the law, this stock is clothed with all the attributes of property, and may be bought and sold as such. Its owner is subject to taxation thereon. There is no limitation upon the power of the state, both to ·tax the shareholder upon his stock and also to tax the corporation upon its corporate assets. This double power of taxation is not always, perhaps not often, exercised. It may fairly be said that the policy of this state has been not to tax both the corporation upon its assets and the shareholder upon his stock. Such is the policy followed in the taxing of corporate banking. If the state were exercising herein its double power of taxation, and were to tax the corporation upon its assets, the right of exemption would be available for the corporation. This fact, however, could not avail the shareholder to claim the exemption in the taxation of his stock. In a legal sense, a share of stock is an item of property separate and distinct from any asset of the corporation, although the extent of its value may be materially dependent upon such assets. The character of this item of property and its liability to taxation remain precisely the same, whatever the liability of the corporation itself may be for taxes upon its corporate assets. We use this argument only to illus-

trate the separate identity of a stock share as property. We neither hold nor suggest that the state has this double power of taxation *as to national banks,* under the permission of Section 5219. The holding in *Bank of California v. Richardson,* 248 U. S. 476, would indicate otherwise. The power of "one taxation," however, is quite plenary, under Section 5219, and is subject only to the qualification that there be no discrimination against national banks in favor of a corporate or individual competitor. The taxation of bank shares of stock to the shareholder is not, in a legal sense, the taxation of the corporate assets. Such tax is, therefore, not a tax upon exempt securities held by the corporation as a part of its assets. Such was the holding of the United States Supreme Court in *Van Allen v. Assessors,* 3 Wall. (U. S.) 573; and in *Owensboro Nat. Bank v. Owensboro,* 173 U. S. 664. Such also was the holding of the *Hannan* case, supra, which we purported to follow in the original opinion upon the Federal question presented. We hold, therefore:

(1) That our statute creates no discrimination against national banks in favor of any competitor, whether corporate or individual; nor is it made to appear that any discrimination results from the practical operation of the law as applied.

(2) That the shareholder is not, in a legal sense, the owner of the exempt securities held by the corporation, and that he is not, therefore, entitled to claim exemption thereunder.

III. Petitioner brings to our attention a recent opinion of the Supreme Court of the United States, handed down July 15, 1921, since the submission of the petition herein, in the case of *Merchants' Nat. Bank v. City of Richmond,* 256 U. S. — (65 L. Ed. 717). It is earnestly urged upon us that this opinion supports the contention of the petitioner, and that it is quite decisive thereof. It appears from the opinion in that case that, pursuant to certain legislation by the state and certain ordinances by the city of Richmond, Indiana, a certain rate of taxation of $1.75 per hundred dollars was imposed upon all bank corporations, state and national; whereas a rate of only 95 cents per hundred dollars was imposed upon moneyed capital in the hands of individuals who were competitors with the national banks in the loan market. This competition extended into millions of dollars, and was, therefore, relatively material. It was held

that "the ordinance and statute under which the stock of plaintiff in error was assessed, as construed and applied, exceeded the limitation prescribed by Section 5219, Revised Statutes, and hence that the tax is invalid." We are unable to see wherein such opinion runs counter to our present holding.

It is earnestly urged that the *Hannan* case, supra, should not be deemed controlling of the case at bar. The emphasis of the argument in support of the contention is that the exempt securities involved in the case at bar consisted of Federal Reserve stock, and of recent bond issues, none of which were involved in the *Hannan* case, and none of which were even in existence at the time the decision was rendered. The form or character of the exempt securities is not material to the decision. The ultimate question for solution, both in the *Hannan* case and in this, was and is whether, where a bank's corporate assets includes United States securities, exempt from taxation under Federal statute, such right of exemption attaches to the shares of stock in the hands of the shareholder. If yea, then the rule or principle applies to *all* such exempt securities; if nay, it can apply to *none*. We are confirmed in our conclusion that our former opinion must be adhered to, and the petition for rehearing is, accordingly, overruled.